684 A.2d 622

**Lela Marie LEONARD**

v.

**Andre P. SMITH, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1996.

Filed Oct. 21, 1996.

Jan I. Medoff, Pittsburgh, for appellant.

Lorraine M. Bittner, Pittsburgh, for appellee.

Before CIRILLO, President Judge Emeritus, and TAMILIA and HESTER, JJ.

TAMILIA, Judge:

Andre Smith appeals from the March 9, 1995 judgment of sentence imposing three consecutive six-month terms of imprisonment and one concurrent six-month term. Following a hearing, appellant was adjudged guilty of four counts of indirect criminal contempt on the basis that he had violated the provisions of a protection from abuse (PFA) Order. The charges stemmed from appellant's continued threatening contacts with his former girlfriend, appellee Lela Marie Leonard.

On April 26, 1993, appellee initiated this action by filing a PFA petition against appellant, and a preliminary Order was issued on that date excluding appellant from appellee's residence. On May 4, 1993, a final Order was entered by consent of the parties which directed appellant to refrain from having any contact with appellee for a period of one year. Thereafter, appellant's continued contact with appellee caused several consent Orders to be entered extending the protective provisions of the May 4, 1993 final Order. By consent Order dated April 27, 1994, the provisions of the final Order were continued until May 11, 1994, on which date the provisions were extended until June 29, 1994, when the provisions were again extended, until December 28, 1994. Several additional complaints also were filed prior to December 28, 1994, and a hearing scheduled for that date was ultimately continued until March 9, 1995. At the hearing, six outstanding complaints were consolidated and both parties, via counsel and testimony, participated in the proceedings. Following the hearing, appellant was adjudicated not guilty on two of the violations, but guilty on the remaining four violations. These included a single, continuing violation from April 26, 1993, to May 14, 1993, and violations on October 19, 1993, March 20, 1994 and September 2, 1994, respectively. The aforementioned sentence then was imposed.

At the time the present contempt sentence was imposed, appellant already had received a sentence on separate criminal charges arising out of the March 20, 1994 PFA violation. Specifically, on August 24, 1994, appellant had pled guilty to

stalking,[1] harassment by communication [2] and criminal mischief [3] and was sentenced on October 19, 1994 to one and one-half (1½) to five (5) years' imprisonment and one year probation.[4] This prior sentence becomes important because of a recent development in our law concerning double jeopardy.

■ In his brief, appellant makes the apparent concession that "a prosecution for contempt of a violation of a PFA statute is not barred by double jeopardy even though the contempt proceeding involved the same conduct as [a separate] criminal case." (Appellant's brief at 7.) For this proposition, appellant cites *Commonwealth v. Allen*, 506 Pa. 500, 486 A.2d 363 (1984), *cert. denied*, 474 U.S. 842, 106 S.Ct. 128, 88 L.Ed.2d 105 (1985).

However, as appellant recognized at oral argument, *Allen* has been overruled by our Supreme Court in the recent case of *Commonwealth v. Yerby*, 544 Pa. 578, 679 A.2d 217 (1996). According to *Yerby*, in determining whether the double jeopardy clause bars a subsequent criminal prosecution for conduct which served as the basis of a criminal contempt citation:

[W]e must look to the specific offenses at issue in the contempt proceeding and compare the elements of those offenses with the elements of the subsequently charged criminal offenses. If they are the same, or if one is a lesser included offense of the other, double jeopardy attaches and the subsequent prosecution is barred. The focus, then, is on the offense(s) for which the defendant was actually held in contempt.

Again, it is the elements of the offenses for which the defendant has been found guilty in the contempt proceedings and the subsequent criminal proceedings to which the

1. 18 Pa.C.S. § 2709.

2. *Id.*, § 5504.

3. *Id.*, § 3304.

4. The record also indicates that at the time of sentencing in this case, appellant was awaiting trial on criminal charges arising from the violation of September 2, 1994. Although appellant's brief indicates that he was ultimately sentenced on those charges, neither the brief nor the record indicate the terms of the sentence.

*Blockburger* [*v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ] test will be applied. Rather than compare the general elements of contempt of court [as mandated by the holding of *Allen* ], we compare the elements of the offense actually deemed to have been violated in that contempt proceeding against the elements of the substantive criminal offense(s).

*Id.* at 588, 679 A.2d at 221–222 (footnote omitted). Thus, according to *Yerby*, the double jeopardy clause will bar a subsequent criminal prosecution for conduct which served as the basis of a criminal contempt citation unless each of the offenses for which the defendant is tried or punished contains an element not contained in the other.

■ Initially, we note that unlike *Yerby*, appellant in the instant case received the criminal sentence prior to the contempt sentence. However, since both are criminal proceedings, this is not a relevant distinction and the double jeopardy clause nonetheless applies. *See Wagner v. Wagner*, 387 Pa.Super. 246, 248–250, 564 A.2d 162, 163 (1989), *appeal denied*, 525 Pa. 628, 578 A.2d 415 (1990) (criminal contempt proceeding arising under the PFA "is criminal in nature and has double jeopardy implications.").

■ In order to apply the "same element" test of *Yerby*, we must first determine the offenses with which appellant was charged at the prior criminal proceeding and compare them to the offenses underlying the subsequent contempt proceeding. *Yerby, supra.* In this regard, the record indicates that on August 24, 1994 appellant pled guilty to stalking, harassment by communication and criminal mischief arising out of the March 20, 1994 incident. As noted, on October 19, 1994, he received a sentence of one and one-half (1½) to five (5) years' imprisonment on the stalking charge and one (1) year probation for harassment by communication (N.T., 3/9/95, p. 14). No further penalty was imposed on the criminal mischief charge. Following the contempt proceeding, the court convicted appellant of the March 20, 1994 violation but did not state the specific offenses underlying the conviction. Thus, we

must look elsewhere in the record to identify these offenses.[5] In this regard, the contempt complaint states that "[t]he acts committed by [appellant] were: actor did enter victim's house and attempted to assault her." (Supp.R. at 14.) Further, testimony at the contempt hearing indicates that appellant "walked up to [appellant's] screen door [and] was reaching like he had a weapon of some sort[.]" (N.T. at 7.) Initially, we note that these statements appear to conflict over whether appellant actually entered appellee's house. While this is a relevant factor in considering the type of trespass committed by appellant, it is clear that appellant committed either criminal or defiant trespass. For purposes of our double jeopardy analysis, we will give appellant the benefit of the doubt and assume he committed only the lesser offense, defiant trespass.[6] Thus, we must compare the elements of stalking, harassment by communication and criminal mischief, the charges underlying the criminal conviction, with those of defiant trespass and assault,[7] the charges which apparently served as the basis of appellant's contempt conviction. The stalking, harassment and criminal mischief statutes of Title 18 of Purdon's provide:

### § 2709.  Harassment and stalking

.     .     .     .     . .

(b) Stalking.—A person commits the crime of stalking when he engages in a course of conduct or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either of the following:

5.  The Court in *Commonwealth v. Yerby*, 544 Pa. 578, 679 A.2d 217 (1996), was not able to determine "the precise basis for the trial court's finding of contempt", *id.* at 590, 679 A.2d at 223, because it was not provided with the complete record. *Id.* at 590 n. 12, 679 A.2d at 223 n. 12. Rather, the Court relied upon the general prohibitions of the PFA Order.

6.  Defiant trespass is a third degree misdemeanor, 18 Pa.C.S. § 3503(b)(2), whereas criminal trespass is a second or third degree felony, *id.*, § 3503(a)(2).

7.  Attempted assault constitutes assault under 18 Pa.C.S. § 2701(a)(1).

(1) an intent to place the person in reasonable fear of bodily injury; or

(2) an intent to cause substantial emotional distress to the person.

### § 5504. Harassment by communication or address

**(a) Offense defined.**—A person commits a misdemeanor of the third degree if, with intent to harass another, he:

(1) makes a telephone call without intent of legitimate communication or addresses to or about such other person any lewd, lascivious or indecent words or language or anonymously telephones another person repeatedly; or

(2) makes repeated communications anonymously or at extremely inconvenient hours, or in offensively coarse language.

### § 3304. Criminal mischief

**(a) Offense defined.**—A person is guilty of criminal mischief if he:

(1) damages tangible property of another intentionally, recklessly, or by negligence in the employment of fire, explosives, or other dangerous means listed in section 3302(a) of this title (relating to causing or risking catastrophe);

(2) intentionally or recklessly tampers with tangible property of another so as to endanger person or property;

(3) intentionally or recklessly causes another to suffer pecuniary loss by deception or threat; or

(4) intentionally defaces or otherwise damages tangible public property or tangible property of another with an aerosol spray-paint can, broad-tipped indelible marker or similar marking device.

As to the contempt conviction, the trespass and assault statutes provide:

### § 3503. Criminal trespass

**(b) Defiant trespasser.**—

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:

    (i) actual communication to the actor; or

    (ii) posting in a manner prescribed by law or reasonably likely to come to the attention of intruders; or

    (iii) fencing or other enclosure manifestly designed to exclude intruders.

## § 2701. Simple assault

(a) **Offense defined.**—A person is guilty of assault if he:

(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;

(2) negligently causes bodily injury to another with a deadly weapon; or

(3) attempts by physical menace to put another in fear of imminent serious bodily injury.

As these provisions indicate, each of the charges underlying appellant's criminal conviction require proof of an element which is not required by either of the charges underlying the subsequent contempt conviction, and vice versa. Defiant trespass requires unauthorized entry onto property and assault requires attempting to cause or causing bodily injury or the fear of bodily injury. None of the offenses underlying appellant's criminal conviction require these elements. On the other hand, stalking requires a course of conduct or repeated acts, harassment by communication requires a telephone call or repeated communications and criminal mischief requires damage to or tampering with tangible property or pecuniary loss. Neither defiant trespass nor assault require any of these elements. Since "each offense requires proof of an element that the other[s] does not, the offenses are separate and double jeopardy does not apply." *Yerby, supra* at 583, 679 A.2d at 219. Therefore, we find that double jeopardy did not bar appellant's subsequent contempt conviction for the

incident of March 20, 1994, even though appellant had been sentenced criminally for charges arising from the same incident.

Finally, we note that even if we look to the language in the PFA Order,[8] there is no double jeopardy violation because it does not include the elements of the offenses for which appellant was convicted in the criminal proceeding. *See Yerby, supra* at 590, 679 A.2d at 223 ("[T]he PFA Order at issue here did not include the elements of terroristic threats", the offense underlying appellant's criminal conviction). In other words, it was not necessary that the court establish any of the elements of stalking, harassment by communication or criminal mischief in order to convict appellant of contempt. Rather, contempt could have been premised on a violation of any provision of the PFA Order and we will affirm an Order of the trial court which is correct on any legal ground. *See Wecht v. PG Pub. Co.,* 353 Pa.Super. 493, 510 A.2d 769 (1986).

Appellant next challenges his sentence as an abuse of discretion on three bases. Specifically, appellant claims that "given the fact that [he] was sentenced criminally to a long term well above the sentencing guidelines, the fact that the court reviewed a pre-sentence report not for this particular proceeding and the fact that [he] showed his remorse, the sentence of eighteen (18) months was excessive." (Appellant's brief at 8.) We reject these claims.

Initially, as to appellant's claim that he was "sentenced criminally to a long term well above the sentencing guidelines", we note that he is apparently referring to the criminal sentence imposed on the March 20, 1994 incident. However, no appeal from that judgment of sentence is before us and we are concerned only with the contempt sentence. In that regard, the contempt sentence is expressly authorized by the PFA Act, which provides for a six-month term of imprison-

---

8. The Order prohibited appellant from contacting, abusing or harassing appellee, or entering her residence or place of business. Order, 5/14/93.

ment for each contempt of a PFA Order.[9] Thus, the Act empowers the court to vindicate its authority via punishment of contemptuous conduct and the imposition of sentence in a separate criminal proceeding does not somehow diminish or abrogate that power, so long as double jeopardy prohibitions have not been violated.

■ Next, appellant claims "the court reviewed a pre-sentence report which was not prepared for this particular case." (Appellant's brief at 8.) While our review of the record indicates that this statement is true (see N.T., 3/9/95, p. 95), appellant provides no argument or citation as to its import. Further, the report which the court reviewed had been prepared for the criminal proceedings on the March 20, 1994 PFA violation and thus involved the same parties and the same recent conduct which was at issue in the PFA hearing. As such, the report was relevant and material to the PFA court's sentencing proceeding and, particularly in light of appellant's failure to argue this claim, we find no error. Finally, the record indicates that defense counsel reviewed the report and did not object to its consideration by the trial court (N.T. at 95).

■ Appellant also claims the PFA court abused its discretion in sentencing because appellant demonstrated remorse. Again, beyond the bald allegation, appellant does not discuss this claim. At any rate, our review of the record indicates that appellant expressed no remorse for his repeated PFA violations until after the adjudication of guilt. In fact, throughout the violation hearing held on March 9, 1995, appellant claimed appellee was a liar who set him up because he had left her. We will not allow appellant's tardy expression of remorse to now undermine an appropriate sentence for his egregious and repeated PFA violations. For these reasons, we find appellant's sentence was not excessive and the trial

9.    23 Pa.C.S. § 6114.  **Contempt for violation of order or agreement.**

  (b) Trial and punishment.—A sentence for contempt under this chapter may include imprisonment up to six months or a fine of not less than $100 nor more than $1,000, or both[.]

court committed no abuse of discretion. *See Commonwealth v. Corson,* 298 Pa.Super. 51, 56, 444 A.2d 170, 172 (1982) ("there is no abuse of discretion unless the sentence is manifestly excessive so as to inflict too severe a punishment").

■ Appellant next claims the court's finding of contempt as to the March 20, 1994 incident was against the weight of the evidence. Appellant recounts his trial testimony that appellee fabricated her allegations against him as retribution for his prior conduct. However, this testimony was refuted by appellee, and the PFA court, whose duty it was to assess credibility, found in favor of appellee. We will not disturb this finding. *Commonwealth v. Hall,* 382 Pa.Super. 6, 554 A.2d 919 (1989) (determination as to the credibility of witnesses is within the sole province of the fact-finder and such determination will not be reversed on appeal).

Finally, appellant claims the lower court lacked jurisdiction over the incident of September 20, 1994, since the PFA Order of May 4, 1993 had a duration of one year and expired on May 3, 1994, prior to the violation of September 20, 1994.

As the record clearly indicates, appellant's repeated violations of the May 4, 1993 final Order caused numerous Orders to be entered extending PFA protection. In fact, these Orders were entered with the consent of appellant. The last of these Orders, dated June 29, 1994, expressly provides "pending the December 28, 1994 hearing, all provisions of the May 4, 1993 final Order shall remain in effect." Order, Ridge, J., 6/29/94. Thus, PFA protection was extended until December 28, 1994 and the court clearly possessed jurisdiction over the September 20, 1994 PFA violation. Appellant's claim to the contrary is patently void of merit.

Based on the foregoing, we find no error in the March 9, 1995 judgment of sentence, which was a proper response to appellant's repeated disregard of the May 4, 1993 PFA Order. *See Commonwealth v. Warrick,* 415 Pa.Super. 385, 389, 609 A.2d 576, 578 (1992) (contempt proceedings upheld where required "to vindicate the authority of the court and must be

viewed as a necessary tool for deterring abuse of the judiciary.").

Judgment of sentence affirmed.