691 A.2d 472

**COMMONWEALTH of Pennsylvania**

**v.**

**Leopold C. ROEFARO, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 6, 1997.

Filed March 14, 1997.

John F. Siford, Assistant Public Defender, Hollidaysburg, for appellant.

David Gorman, Assistant District Attorney, Hollidaysburg, for Commonwealth, appellee.

Before KELLY, HUDOCK, and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

This case asks us to decide whether an evidentiary ruling, admitting evidence of prior stalking convictions to prove a later stalking charge, violates a criminal defendant's constitutional right to be free from double jeopardy. It does not, and we will uphold the trial court because the introduction of the evidence was proper and the illogical extension of appellant's argument makes a mockery of the great constitutional protection against double jeopardy envisioned by our forefathers.

During the spring of 1989, while working at a local mall, Barbara Blair made the acquaintance of Leopold Roefaro, appellant herein. Soon thereafter, appellant began to make romantic advances towards Ms. Blair. Although Ms. Blair attempted to reject appellant's advances, her efforts were in vain. Indeed, apparently undeterred by Ms. Blair's rebukes, appellant's behavior towards Ms. Blair began to be more insistent.

By the spring of 1994, Ms. Blair determined that police activity was necessary to restrain appellant's aggressive conduct. Appellant was arrested and pled no contest to two counts of stalking, a violation of 18 Pa.C.S.A. § 2709(b). As an aggregate sentence, appellant was placed on twenty-four months' probation and ordered to have no contact with the victim or her family. Additionally, appellant was prohibited from scrawling "Leo loves Barbara" on various surfaces throughout the city of Altoona.

The evidence before the trial court showed that appellant soon sent two letters to Ms. Blair. These letters read as follows:

I never wanted any trouble. I just wanted you to know how I feel about you. My feelings still haven't changed and they never will because I made my choice. I am going to keep waiting for you the rest of my life because you are worth a

lot to me. I don't know if you are married or seeing somebody else but I know you. I also know that things could work out if we were together because I would never fight with you or argue. I thought about you all this time and my mind is made up. I want to be with you only. You are the right woman for me. I love you. I mean it. Seriously, I can't make you believe it but I know that it is true. Love, hugs and kisses, Leo. P.S. Merry Christmas, Happy Birthday and New Year.

I love you. The reason why I keep letting you know is because I feel that you don't believe me. I've wrote letters, called, came up to you in person. I don't want to hurt you so you might as well quit having nightmares. I want you to know that I love you and [want to] marry you and have a little girl. I'm writing also because these feelings for you are inside of me and I have to get them out. I'm going to love you no matter how much I have to go through. Other people don't scare me and I'm not harassing or stalking you. I love you forever and that is my true feelings. No man in this world will ever love you as much as I do. Love, Leo.

Ms. Blair was so disturbed by these unabated and unwanted contacts that she moved out of the state for a period of time. Following the death of her stepfather, however, family circumstances necessitated her return to the Altoona area.

Some months later, a probation department employee named Richard Prince contacted Ms. Blair and showed her three items that had apparently been left on the front porch of Ms. Blair's sister's home. These items were: (1) a cassette tape on which appellant had drawn a heart and written "Barb" and "love note"; (2) a copy of a letter sent years earlier from Ms. Blair to appellant informing appellant that Ms. Blair did not share the same feelings as appellant; and (3) a book originally titled *The Art of Getting Even, the Do–It–Yourself Justice Manual*, altered by appellant to read *The Heart of Getting Even, the Do–It–Yourself Justice Manual*.

Appellant was subsequently questioned by members of the adult probation office. He readily admitted leaving the para-

phernalia, and as an explanation stated "I love her, what can I say." Based upon this information, appellant was detained and charged with three counts each of harassment and stalking. Following the denial of appellant's pre-trial motion to dismiss the complaint as violative of the protections against double jeopardy, the case proceeded to a jury trial. On June 11, 1996, appellant was adjudged guilty as to all charges. Sentencing was deferred pending the preparation of a pre-sentence report.

On July 30, 1996, appellant was sentenced to an aggregate term of eighteen to thirty-six months' imprisonment with a consecutive four-year term of probation. Also, a no-contact order was entered which was effective throughout the term of appellant's probation.

■ On appeal, appellant's sole contention is that the trial court erred in denying appellant's motion to dismiss and, thereafter, admitting his prior stalking convictions into evidence. More specifically, appellant avers that his constitutional right to be free from double jeopardy was violated because the Commonwealth introduced appellant's prior stalking convictions in order to establish the "course of conduct" element for the present stalking offenses.[1]

■ At the outset, we note that our standard of review when evaluating evidentiary issues is well settled. Trial judges are afforded broad latitude and discretion in determining the admissibility of evidence. Their learned determinations will not be disturbed absent a finding of an abuse of

1. Although appellant claims that his present convictions violated both the federal and state constitutional double jeopardy provisions, his argument with respect to the state constitution is noticeably lacking in substance. Because our Supreme Court has held that the state constitutional issue development protocol outlined in *Commonwealth v. Edmunds*, 526 Pa. 374, 389–91, 586 A.2d 887, 895 (1991), is optional, although preferred, this alone would not bar consideration of the state claim. *See, e.g., Commonwealth v. Hayes*, 544 Pa. 46, 51–53, 674 A.2d 677, 680 (1996). Nonetheless, because we have recently held that our state double jeopardy provision is to be interpreted coextensively with its federal counterpart, we will not currently embark upon a separate state constitutional analysis. *See Commonwealth v. Breeland* 445, Pa.Super. 147, 158–60, 664 A.2d 1355, 1361 (1995).

discretion. *See, e.g., Commonwealth v. Persichini,* 444 Pa.Super. 110, 121–22, 663 A.2d 699, 704 (1995); *Commonwealth v. Holloman,* 424 Pa.Super. 73, 78–80, 621 A.2d 1046, 1049 (1993).

Instantly, appellant maintains that, absent the introduction of his prior convictions, the Commonwealth would not have been able to meet its burden of proof with respect to the course of conduct element of the present stalking charges. Additionally, and more importantly, he maintains that their introduction was in error in that it violated his constitutional right to be free from double jeopardy.

■ As a general rule, a defendant's prior bad acts, including convictions, are not admissible to prove criminal propensity or bad character. *See, e.g., Commonwealth v. Peer,* 454 Pa.Super. 109, 119, 684 A.2d 1077, 1082 (1996). There are, however, numerous exceptions to this rule, two of which hold that one's prior acts may be admissible to prove intent and course of conduct provided that their probative value is not outweighed by their prejudicial impact. *See, e.g., Commonwealth v. Urrutia,* 439 Pa.Super. 227, 233–35, 653 A.2d 706, 709 (1995).

Indeed, the issue of the propriety of introducing a defendant's prior bad acts in connection with the same victim to prove course of conduct in a subsequent stalking case has been passed upon previously by our Court. In *Commonwealth v. Urrutia, supra,* we held that "[c]ourse of conduct by its very nature requires a showing of a repetitive pattern of behavior. Therefore, where evidence of prior bad acts is necessary to establish the pattern, the evidence is admissible." *Urrutia,* 439 Pa.Super. at 235, 653 A.2d at 710.

Appellant does not currently challenge the core soundness or propriety of our holding in *Urrutia.* Rather, his argument questions the scope of that holding. Essentially, appellant argues that, although prior bad acts in connection with the same victim may be introduced to fulfill the course of conduct element of a stalking charge, those prior bad acts may not rise to the level of prior stalking **convictions**. This, he argues,

violates the proscription against double jeopardy because a person is twice convicted and, thus, punished, for the same behavior. This is a ludicrous argument that misstates and contorts the law of double jeopardy and, as will be shown, leads to absurd results.

■ Double jeopardy protections prohibit a person from being twice tried for actions arising from the same factual predicate. It does not bar successive prosecutions based upon temporally distinct actions that happen to impinge the same section of the Crimes Code. *See, e.g., Commonwealth v. Decker,* 445 Pa.Super. 101, 103–05, 664 A.2d 1028, 1029 (1995); *Commonwealth v. Johnson,* 542 Pa. 568, 669 A.2d 315 (1995) (double jeopardy prohibits a second prosecution for the same offense following either an acquittal or a conviction, and it prohibits multiple punishments for the same offense).

■ In the instant matter, appellant was twice tried and convicted for actions arising out of separate and distinct factual predicates, thus making the double jeopardy clause inapplicable. It is true that the former convictions were introduced at the later trial; however, their introduction was purely a matter of evidence.

As previously detailed, in 1994 appellant pled no contest to actions amounting to stalking. Thereafter, while on parole, appellant violated the no-contact order and left three items on the victim's sister's porch. It is appellant's contention that he cannot be convicted of stalking for this subsequent action because stalking requires a course of conduct and the course of conduct cannot be proven through the introduction of prior convictions. Instead, the subsequent action could amount only to a lesser offense, such as harassment, which does not require that the Commonwealth prove a course of conduct. Taken to its natural, yet wholly illogical and absurd extent, this rationale would provide a person with one "free stalk" following a prior stalking conviction.

Appellant's current appeal arises out of stalking convictions that resulted from behavior occurring subsequent to his 1994 stalking convictions. He was not arrested, charged, tried, or

sentenced for any behavior that underlay the former convictions. Consistent with the statutory requirements of the crime, the former convictions were introduced in the later trial to show that appellant had a continuing habit, a course of conduct, of acting in a similar manner. Because appellant was not twice tried for the former behavior, we see no reason to make the distinction between former behavior resulting in conviction versus that which did not. Thus, we hold that prior bad acts evidenced by criminal convictions may be introduced at a subsequent trial to prove the course of conduct element of a stalking charge.[2]

■ Having determined that the challenged evidence was admissible and necessary in order to prove that appellant engaged in a course of conduct prohibited by the stalking statute, our inquiry must turn to whether the admission resulted in undue prejudice. In so doing, we must consider whether the inflammatory nature of the evidence outweighed its probative value to the point where the probative value became *de minimus*. *See, e.g., Peer,* 454 Pa.Super. at 120, 684 A.2d at 1083; *Commonwealth v. Blount,* 387 Pa.Super. 603, 614–16, 564 A.2d 952, 958 (1989).

Applying this standard, we cannot say that appellant was unfairly prejudiced by the admission of the prior convictions. Their probative value was unquestionably high, even necessary to a successful conviction. Moreover, the record reveals that the trial judge limited the introduction of appellant's former contacts with the victim and did not allow much of their seven-year history to be revealed to the jury. *See, e.g.,* TT 6–10–96 at 23. Therefore, while the introduction of the convictions may have prejudiced appellant in the sense that they aided the Commonwealth in securing a conviction, we

---

**2.** We believe it is necessary to distinguish our holding from this Court's recent decision in *Leonard v. Smith,* 454 Pa.Super. 51, 684 A.2d 622 (1996). In *Leonard,* a double jeopardy analysis was appropriate because the appellant was prosecuted for conduct which served as the basis of a criminal contempt citation after violating the provisions of a Protection From Abuse order. Presently, however, appellant was prosecuted based upon two distinct violations of the Crimes Code rather than the violation of an underlying protective order.

cannot say that their introduction resulted in undue prejudice such that appellant received an unfair trial.

Judgment of sentence affirmed.

HUDOCK, J., files a concurring statement.

HUDOCK, Judge, concurring.

I concur in the result and the supporting reasoning of the majority opinion. I disagree, however, with the majority's discussion of the standard of review regarding evidentiary issues and with the statement that "trial judges are afforded broad latitude and discretion in determining the admissibility of evidence." While this may be true as to some issues, such as relevancy, it is not true in most other situations. Evidence should be admitted or rejected in accordance with well established rules of law, and discretion usually should play no part in their application.

Unfortunately, there are cases from our appellate courts which do state that the admission of evidence is at the discretion of the trial court. I believe such statements are misleading and should not be perpetuated.