J-A24039-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PETER FERRIERA, | |
| Appellant | No. 139 EDA 2014 |

Appeal from the Judgment of Sentence December 13, 2013
in the Court of Common Pleas of Chester County
Criminal Division at No.: CP-15-CR-0002189-2012

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:               **FILED NOVEMBER 12, 2014**

Appellant, Peter Ferriera,[1] appeals from the judgment of sentence imposed following his bench trial conviction of harassment and stalking. He challenges the sufficiency of the evidence. We affirm.

Appellant's conviction arose out of a course of conduct in which he attempted to pursue a romantic relationship with Lisa Robertson, a television host who presents products on the QVC shopping channel. This conduct continued a prior course of several previous attempts at in-person encounters when Ms. Robertson travelled for promotional appearances, including at the home of her parents in Tennessee, and multiple visits to

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant's surname is also variously spelled "Ferreira" in the record.

QVC headquarters in Chester County, Pennsylvania. Appellant is a native of Connecticut.

QVC required its on-air personalities to maintain Facebook pages, as a means of fostering audience identification with them, and extending the opportunities for product promotion. (*See* N.T. Trial, 10/11/13, at 52). These Facebook pages included references to personal activities such as vacations, and daily activities like exercise routines and grocery shopping, as well as product references and recommendations. Ms. Robertson testified that she received performance reviews evaluating her rate of engagement with Facebook followers and their "activity level." (*Id.* at 54). The acts at issue in this appeal involved comments posted by Appellant to the public Facebook page of Ms. Robertson maintained by QVC.[2] The Commonwealth introduced twenty-two of Appellant's postings into evidence. (*See* Commonwealth Exhibits C-1 through C-22). [3]

_____

[2] Ms. Robertson testified that she did not have a personal Facebook page. (*See* N.T. Trial, at 52).

[3] For example, on April 14, 2012, Appellant posted the following:

LISA, I HAVE A VERY SERIOUS AND SENSITIVE QUESTION TO ASK?? HAVE YOU EVER LOVED SOMEONE SOOOOOO MUCH THAT YOU LIE IN BED THINKING OF "HIM,' HOLDING HIM SO CLOSE (actually it's a pillow HE is holding instead) and YOU ARE HAVING "FEMININE ISSUE," PANTIES "SOAKING WET, "PUPPIES" SUPER SENSATIVE, [sic] ++, YOUR ENTIRE BODY FROM THE "TIP OF YOUR TOES TO THE ENDS OF YOUR HAIR" ARE TINGLING. YOUR MIND IS "MUSH" AND YOUR HEART IS BEATING SOOOOO VERY HARD YOU ARE "BLUSHING"

*(Footnote Continued Next Page)*

While Appellant's messages are often rambling, and borderline incoherent, there is no ground for dispute that in many of them he sought, or imagined there already existed, a personal romantic relationship. On April 9, 2012, he wrote, in pertinent part:

> For all of you please understand this:
> You do "not" know me!!!
>
> * * *
>
> You do not know what happened or when, where and why! Lisa and "I" do!!! We "lived it!!" And yes it is and "always has been "we". Lisa & I her "pet"!!

(Commonwealth's Exhibit C-7) (punctuation in original).

On April 11, 2012, he wrote, in part:

> I love you Lisa Lannel and miss being near you soooo much!! "But I will wait for when you are ready"! No running around! Promise! I hope the 3rd partys [sic] understand what we have is very special not dangerous!! So please let us be as we should have been!!! "Together"!! "Please"!!!!!!!!!!

(Commonwealth's Exhibit C-10) (punctuation in original). On April 15, 2012, Appellant referred to Ms. Robertson as "my very, very special friend and torturer." (**See** Commonwealth's Exhibit C-21). Appellant often wrote multiple times a day.

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

UNCONTROLLABLY BECAUSE YOU LOVED "HIM" SOO SOOOO MUCH YOU CAN NOT STOP SMILING AND CRYING???????

(Commonwealth's Exhibit C-17; **see also** Trial Court Opinion, 1/27/14, at 2) (punctuation and capitalization in original).

Appellant's stalking of Ms. Robertson extends back to June of 2003. (*See* Trial Ct. Op., at 1). On September 27, 2004, Appellant pleaded guilty to stalking and was sentenced to time served and probation. The court ordered him to have no contact with Ms. Robertson or QVC, and required him to undergo a mental health evaluation.[4] (*See id.*). On November 6, 2006, the trial court found him in violation of parole, but elected to take no further action, except to reaffirm that Appellant was to have no contact with Ms. Robertson **or** QVC. (*See id.*).

Appellant concedes that QVC obtained a civil injunction against him in 2004 to prevent him "from any kind of close contact with Lisa Robertson, to cease any type of communication with her, basically stay away." (Appellant's Brief, at 10 (record citation omitted); *see* Order Granting Preliminary Injunctive Relief, 4/16/04, at 1-2; *see also* Order, 4/21/04 (extending preliminary injunction "until otherwise ordered by this [c]ourt.")). Appellant also concedes that this "injunction is still active." (Appellant's Brief, at 10).

Nevertheless, Appellant continued to pursue Ms. Robertson. When QVC personnel became aware, in April of 2012, that Appellant was posting messages to Ms. Robertson's QVC Facebook page, they stepped up their monitoring and eventually contacted the police. Appellant was arrested on

---

[4] Appellant was diagnosed with delusional disorder. (*See* N.T. Hearing, 9/26/13, at 18).

May 22, 2012 and charged with stalking, 18 Pa.C.S.A. § 2709.1, and harassment, 18 Pa.C.S.A. § 2709.

Prior to trial, the defense filed a motion *in limine* under Pennsylvania Rule of Evidence 404(b) to preclude any mention by the Commonwealth to the jury of Appellant's prior conviction. After hearing argument, the trial court ruled that the Commonwealth could refer to the civil injunction, but not the conviction. (**See** N.T. Hearing, 9/26/13, at 12). Immediately afterward, at the same hearing, Appellant requested a non-jury trial. The trial court colloquied Appellant extensively; it then permitted him to waive a trial by jury and proceed to a bench trial. (**See id.** at 27).

At trial, Ms. Robertson testified that Appellant's postings alarmed and scared her, particularly in consideration of his previous attempts to have inappropriate contact with her, as well as his effort to contact her family. (**See** N.T. Trial, 10/11/13, at 56-57). Ms. Robertson began receiving a daily security escort to her car and taking other precautionary measures.

The court found Appellant guilty of stalking and harassment. (**See id.** at 114). On December 13, 2013, the court sentenced Appellant to seven years' probation. This timely appeal followed. Appellant filed a statement of errors on January 15, 2014. **See** Pa.R.A.P. 1925(b). The trial court filed its opinion on January 27, 2014. **See** Pa.R.A.P. 1925(a).

Appellant presents one question, with two sub-questions, for our review:

> Whether the evidence adduced at trial was sufficient for a conviction on the charge of stalking pursuant to 18 Pa.C.S.A.

§ 2709.1(a)(2), specifically whether the communications by [Appellant] were "under circumstances which demonstrated or communicated . . . an intent to . . . cause substantial emotional distress to such other person"[?]

A. Are comments in the landscape of a virtual community message board such as a public figure Facebook page sufficient to show communications "under circumstances which demonstrate or communicate an intent to cause substantial emotional distress"?

B. Did the trial court, as trier of fact, improperly consider prior criminal history not in admitted [sic] in evidence in concluding that [Appellant] had the necessary *mens rea* for stalking beyond a reasonable doubt?

(Appellant's Brief, at 4).

Appellant challenges the sufficiency of the evidence for his conviction of stalking.[5]  He argues chiefly that the Commonwealth failed to prove that he had the intent to cause emotional distress.  (**See** Appellant's Brief, at 13-14).  We disagree.

Our standard of review for a challenge to the sufficiency of the evidence is well-settled.

> In reviewing the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable the jury to find every element of the crime beyond a reasonable doubt.  This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt.  Although a conviction must be based on more than mere suspicion or

---

[5] We note that Appellant raises no insufficiency claim on his conviction of harassment.

conjecture, the Commonwealth need not establish guilt to a mathematical certainty. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Gainer*, 7 A.3d 291, 292 (Pa. Super. 2010), *appeal denied*, 23 A.3d 1055 (Pa. 2011) (case citations and quotation marks omitted).

The Crimes Code defines the offense of stalking as follows:

> **(a) Offense defined.**—A person commits the crime of stalking when the person either:
>
> (1) engages in a course of conduct or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person; or
>
> (2) engages in a course of conduct or repeatedly communicates to another person under circumstances which demonstrate or communicate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person.

18 Pa.C.S.A. § 2709.1.[6]

> (1) A person acts intentionally with respect to a material element of an offense when:

---

[6]Appellant correctly notes that prior to the entry into force of 18 Pa.C.S.A. § 2709.1 in 2003 one statute addressed both stalking and harassment. (*See* Appellant's Brief, at 14). Therefore, caselaw preceding the date of enactment of the new statute often addresses both offenses without mutually exclusive differentiation.

> > (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and
>
> > (ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

18 Pa.C.S.A. § 302(b)(1).

Appellant's first argument is that the evidence was insufficient because he posted his messages to the public Facebook page maintained in the name of Ms. Robertson by QVC. (**See** Appellant's Brief, at 4, 12, 13-20). Comparing his postings to a comment on a public message board, he asserts that "a reasonable person would not believe his or her communications would cause 'substantial emotional distress.'" (**Id.** at 20). He posits that this is so because by posting to Ms. Robertson's public Facebook page, with a fan base of 100,000 followers, there was no expectation that he would receive a response. (**See id.** at 16). He also argues that there was insufficient evidence of intent to cause emotional distress because his "comments also allude to [Appellant] and Ms. Robertson having a relationship with one another or possibly restarting a relationship."[7] (**Id.** at 16). We disagree.

---

[7] The allusion to restarting a relationship refers to Appellant's testimony that in 1982 he had a chance encounter at a party with the then-underage Ms. Robertson, who comforted him after her older sister slipped him a "Mickey" and he fell ill. (**See** N.T. Trial, 10/11/13, at 83-88). Ms. Robertson
*(Footnote Continued Next Page)*

- 8 -

Appellant's argument fails first of all because **how** or **where** he sent his messages has no factual bearing, and is legally irrelevant, to the **content** of his communications. His argument also fails on the facts. The trial court as fact-finder was entitled to accept the testimony of Ms. Robertson that, even though she was assisted by a QVC social media coordinator, she personally responded to as many comments as possible, and did so because she was graded on her performance of this activity. (**See** N.T. Trial, at 53-54).

This Court has previously decided under another statute, that repeated email communications to another person under circumstances which demonstrate or communicate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person are sufficient to prove stalking. **See Commonwealth v. D'Collanfield**, 805 A.2d 1244, 1249 (Pa. Super. 2002). Analyzing the former stalking provision, section 2709(b), for review of a sufficiency claim under 18 Pa.C.S.A. § 5504(a.1) (harassment or stalking by communication), since repealed, this Court affirmed the judgment of sentence and rejected a pre-**Grant** [8]ineffectiveness claim, as without arguable merit.

_(Footnote Continued)_ _____

categorically denied any contact with Appellant outside of court, or any past, present or future relationship with him. (**See id.** at 59, 60).

[8] **See Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002).

The ***D'Collanfield*** Court decided that there was a sufficient basis for appellant's guilty plea on evidence that he sent nine harassing and bizarre emails to a psychologist, causing concern and alarm, after receiving an unwelcome diagnosis, as a paranoid schizophrenic, on his court ordered evaluation. (***See id.*** at 1249). It further decided that intent could properly be inferred from appellant's words or actions in light of all the attendant circumstances. (***See id.***). While the ***D'Collanfield*** Court addressed a different, albeit virtually identical statute, since repealed, we discern no reason why the legal principles it employed cannot be applied to the issue on appeal here.

Similarly, this Court has determined, in construing a prior statute, that unwanted "romantic" advances are sufficient to establish substantial emotional distress. ***See Commonwealth v. Roefaro***, 691 A.2d 472, 475 (Pa. Super. 1997) (affirming judgment of sentence of eighteen to thirty-six months' imprisonment, plus consecutive four-years' probation, after conviction for stalking on proof appellant persisted in pursuit of woman after previous convictions; court properly admitted prior stalking convictions to show course of conduct); ***see also Commonwealth v. Urrutia***, 653 A.2d 706, 709 (Pa. Super. 1995), *appeal denied*, 661 A.2d 873 (Pa. 1995) (under previous statute, prior bad acts properly admitted to establish appellant's intent to stalk victim; testimony permitted inference that appellant intended to cause victim fear for her physical safety or intended to cause her

emotional distress; bad acts also admissible to show course of conduct); **Commonwealth v. Kozinn**, 552 A.2d 1096, 1099 (Pa. Super. 1989) (holding jury may infer intent to harass from attempt to engage in sexually explicit communication with another individual, without prior express or implicit consent of other individual). No changes to the statute have altered the element at issue, or require a revision of the legal analysis this Court has previously employed.

Appellant offers no authority to the contrary. Instead, he notes other cases involving different forms of stalking and posits that because the facts are not the same, the evidence here is insufficient. (**See** Appellant's Brief, at 16) (citing **Commonwealth v. Leach**, 729 A.2d 608 (Pa. Super. 1999) ("calling"); and **Commonwealth v. Hendrickson**, 724 A.2d 315, 316-17 (Pa. 1999) ("fax")). Appellant's argument is unpersuasive.

Preliminarily, he mis-states the facts in **Leach**.[9] He also misapprehends the import of **Hendrickson**, which confirmed the constitutionality of a different statute, harassment by communication or address, 18 Pa.C.S. § 5504, since repealed,[10] and is not at issue in this appeal. **See Hendrickson**, **supra** at 316.

---

[9] **Leach** involved nine acts of vandalism to a vehicle, not "calling." (Appellant's Brief, at 16); **see also Leach**, **supra** at 610.

[10] 18 Pa.C.S.A. § 5504 was repealed by 2002, Dec. 9, P.L. 1759, No. 218, § 4, effective 60 days after enactment.

Furthermore, Appellant's factual premises are faulty, if not disingenuous. First, although there was no dispute that Ms. Robertson had about 100,000 Facebook followers ("[g]ive or take 10 or 20,000"), (N.T. Trial, at 17), on any given day the traffic on her Facebook page was more like "10 to hundreds of comments," (*see id.*), making the prospect of a response much more probable.

Secondly, and more importantly, as the messages quoted here confirm, Appellant actively and unabashedly sought a response in his messages. "A person acts intentionally with respect to a material element of an offense when . . . it is his conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S.A. § 302(b)(1). Here, Appellant intended the natural consequence of his actions, however unrealistic or even delusional his romantic expectations were.

Viewing the evidence here in the light most favorable to the Commonwealth as verdict winner, we have no difficulty in deciding that the evidence was more than sufficient to convict Appellant of stalking. Appellant's issue does not merit relief.

Next, Appellant claims, in sub-question B, that the trial court improperly considered his prior criminal history. (**See** Appellant's Brief, at 4). Referring to the trial court's partial grant of the motion *in limine* (when the parties still contemplated a jury trial), and citing the trial court's statement in its Rule 1925(a) opinion, that Appellant "was not a neophyte in

this area of the law, a factor I took into account in deciding his intent," Appellant posits that the trial court improperly considered evidence of criminal history not presented at trial. (*See* Appellant's Brief, at 20-25; *see also* Trial Ct. Op., at 4). We disagree.

First, Appellant did not raise this issue with the trial court. Accordingly it is waived. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

Second, Appellant did not raise this issue in his statement of errors. It is waived for that reason as well. "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii).

Third, "[i]t is presumed that a trial court, sitting as factfinder, can and will disregard prejudicial evidence." *Commonwealth v. Miller*, 987 A.2d 638, 670 (Pa. 2009) (citations omitted). Similarly, a trial court sitting as fact-finder is traditionally "presumed to disregard inadmissible evidence and consider only competent evidence." *Commonwealth v. Kearney*, 92 A.3d 51, 61 (Pa. Super. 2014) (citation omitted). Further, a trial court's mere knowledge or familiarity with a defendant's prior criminal history does not undermine a subsequent conviction. *See id.* Therefore, even assuming, contrary to fact, that the evidence at issue was inadmissible, under well-settled law the trial court sitting as fact-finder would be presumed to disregard it.

Fourth, Appellant waived a jury trial, fully aware, as was his counsel, that the trial court, which had just ruled on his motion *in limine*, was thoroughly acquainted with Appellant's criminal history.

Fifth, the trial court did not say it considered prior convictions, only that it considered that Appellant was "not a neophyte in this area of the law," a reference equally applicable to the still-outstanding civil injunction, which, after all, the trial court had ruled admissible.  (Trial Ct. Op., at 4).

Sixth, evidence of prior convictions **is** admissible to prove intent and course of conduct in a prosecution for stalking.  ***See Commonwealth v. Roefaro***, ***supra*** at 475; ***Urrutia***, ***supra*** at 709.

Appellant's second argument is waived and would not merit relief.

Our reasoning differs somewhat from that of the trial court.  However, an appellate court may affirm a valid judgment based on any reason appearing in the record.  ***See Commonwealth v. Elia***, 83 A.3d 254, 264 (Pa. Super. 2013), *appeal denied*, 94 A.3d 1007 (Pa. 2014).

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/12/2014