J-A16004-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| M.P., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| T.N., | |
| Appellee | No. 1166 WDA 2015 |

Appeal from the Order July 2, 2015
In the Court of Common Pleas of Allegheny  County
Family Court at No(s): FD 06-009327-006

BEFORE:  SHOGAN, OLSON, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED AUGUST 26, 2016**

Appellant, Dr. M.P.[1] ("Mother"), appeals from the order dismissing her petition filed pursuant to the Protection from Abuse ("PFA") Act, 23 Pa.C.S. §§ 6101–6122 ("PFA Act"), against T.N. ("Father"), on behalf of the parties' minor daughter, J., who was born in August of 2004 ("Daughter").  Mother asks this Court to reverse the trial court's order dismissing her PFA petition and issue a final order granting it.  She argues that she presented sufficient evidence of abuse to warrant relief.  Upon careful review, we affirm.

_____

[*]  Retired Senior Judge assigned to the Superior Court.

[1]  Pursuant to our Internal Operating Procedure 424 (Confidentiality Issues), we are using the parties' initials to protect the identity of a minor.

Pursuant to a 2007 consent order of court, Father had supervised visitation with Daughter on Thursday, Friday, and Sunday evenings. Order, 4/12/07. Pursuant to a subsequent consent order, Mother retained primary physical custody of Daughter, and, beginning in mid-July 2008, Father's partial custody was modified to visits every other weekend and on alternating Tuesday and Thursday evenings. Order, 6/5/08, at ¶ 2(a–l). The trial court entered a divorce decree on February 13, 2009.

As Daughter matured, her relationship with Father became problematic, leading to an altercation in October of 2014. Thereafter, Mother arranged for the parties to attend family counseling sessions. Although willing to participate at first, Father's interest in counseling ended with his filing for shared legal and physical custody. Petition for Modification for Shared Physical Custody, 12/8/14. Mother also sought modification of custody. Petition for Special Relief, 12/11/14. Father filed a response to Mother's petition in which he detailed Mother's efforts to undermine his relationship with Daughter and requested a finding of contempt against Mother. Response to Petition for Special Relief and Motion for Contempt and Special Custody Relief, 12/10/14, at ¶¶ 3–10. In the first of two orders dated December 9, 2014, the trial court granted Father's petition with regard to Mother's obstructive behavior and preserved Father's contempt issues. Order, 12/10/14. In the second order, the trial court directed the parties to continue family counseling and modified Father's partial custody

periods. Order, 12/11/14. Subsequently, the trial court appointed a guardian *ad litem* ("Guardian") for Daughter. Order, 12/12/14.

Daughter's relationship with Father continued to deteriorate, leading to an altercation on June 13, 2015. About two weeks later, Mother applied for a PFA order against Father on Daughter's behalf, and the trial court entered a temporary PFA order suspending Father's custody of Daughter. PFA Order, 6/25/15.

The trial court conducted a hearing on July 1, 2015, at which only Daughter and Father testified. N.T., 7/1/15, at 5–72. Daughter testified in chambers with the trial judge and counsel present. *Id.* at 3. When asked by the trial court why they were there, Daughter replied, "[M]y dad and me have not a good relationship." *Id.* at 8. Daughter then testified about the June 13, 2015 incident which arose from a disagreement about how to fix Daughter's foggy cell phone. *Id.* at 8–11, 31–33. Daughter testified, "I thought he was going to kill me because he was just scaring me and yelling at me and grabbing me." *Id.* at 13. Next, Daughter testified about the October of 2014 incident, during which Father compared Daughter to [K.], the daughter of Father's girlfriend. *Id.* at 14, 27. Daughter stated that she does not like to be compared to [K.] and that she felt Father cared more about [K.], than her. *Id.* at 16, 27. She also stated, "I'm afraid he's going to kill me. He terrifies me" because "he yells at me and grabs me and shakes me." *Id.* at 17, 34. When asked how she would feel if she did not

- 3 -

see her dad for three years, Daughter answered, "I think that would be fine." *Id.* at 35. However, when asked if Father would stop yelling and grabbing her, Daughter admitted that she "would want to see him, like, tomorrow." *Id.* at 38. Daughter further testified that she does not like Father's girlfriend or [K.] because they ignore her. *Id.* at 39.

Father also testified at the PFA hearing about the June 13, 2015 incident involving Daughter's phone. N.T., 7/1/15, at 46–60. According to Father, Daughter asked his help to dry the phone and fix the fogginess. *Id.* at 46. When Father suggested they had to take the LifeProof® case apart to fix the phone, Daughter "didn't want to hear that. . . ." *Id.* at 47. Father described Daughter's demeanor as "very irritable, very short tempered, very demeaning, very condescending, and very mean." *Id.* at 48–49. Father testified that he then left the room for about four minutes, and when he returned, Daughter was "freaking out, her legs are up, she's looking at her cell phone, she is, like, hitting it." *Id.* at 50. Father also described how he made suggestions for fixing the phone, how he physically tried to help Daughter calm herself down, and how she reacted by kicking him. *Id.* at 50–52, 54–58. Father testified that, in response to Daughter's "violent behavior," he called Mother, requesting that she come and help, but Mother refused. *Id.* at 58. Lastly, Father described how he returned Daughter to Mother's custody at which point Daughter said goodbye and hugged him. *Id.* at 59–60.

In separate orders, the trial court limited Father's custody to visitation with Daughter in public places, directed Father and Daughter to undergo reunification therapy, and dismissed the PFA petition. Order, 7/6/15; Order, 7/9/15. Mother appealed and complied with Pa.R.A.P. 1925(b).

On appeal, Mother raises the following issues for our consideration:

A.    Whether the Trial Court erred as a matter of law and abused its discretion in refusing to enter a Protection from Abuse Order on behalf of the parties' minor daughter, J., as a protected party, when the preponderance of the evidence, including testimony by the minor child, demonstrated that the minor child was in reasonable fear of serious bodily injury as defined by 23 Pa.C.S. §6102(a)(2).

B.    Whether the Trial Court erred as a matter of law by applying an incorrect standard of law when refusing to enter a Protection from Abuse Order on behalf of the parties' minor daughter, J.

Mother's Brief at 6.

In a PFA action, we review the trial court's legal conclusions for an abuse of discretion or an error of law. *Boykai v. Young*, 83 A.3d 1043, 1045 (Pa. Super. 2014) (quoting *Stamus v. Dutcavich*, 938 A.2d 1098, 1100 (Pa. Super. 2007) (citation omitted)). We defer to the credibility determinations of the trial court as to witnesses who appeared before it. *Raker v. Raker*, 847 A.2d 720, 724 (Pa. Super. 2004) (quoting *Fonner v. Fonner*, 731 A.2d 160, 161 (Pa. Super. 1999)).

In her first issue, Mother claims that the trial court erred in finding the evidence insufficient to grant her PFA petition. Mother's Brief at 14.

However, closer examination of Mother's argument reveals a weight-of-the-evidence claim: "The Trial Court disregarded evidence of [Daughter's] reasonable fear of serious bodily injury. . ." *Id.* at 17.

"[A]ppellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Walsh*, 36 A.3d 613, 622 (Pa. Super. 2012) (discussing indirect criminal contempt of PFA order). We are bound by the trial court's credibility determinations. *Karch v. Karch*, 885 A.2d 535, 537 (Pa. Super. 2005).

According to the PFA Act, the trial court "may grant any protection order or approve any consent agreement to bring about a cessation of abuse of the petitioner or minor children." 23 Pa.C.S. § 6108(a). The PFA Act defines "abuse," in pertinent part, as follows:

> "**Abuse.**" The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> * * *
>
> (2) Placing another in reasonable fear of imminent serious bodily injury.

23 Pa.C.S. § 6102. "[T]he court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury.... [The] intent [of the alleged abuser] is of no moment." *Raker*, 847 A.2d at 725. "Actual physical harm is not a prerequisite for the entry of a PFA order[;] the victim need only be in reasonable fear of imminent serious bodily injury."

- 6 -

***Thompson v. Thompson***, 963 A.2d 474, 477 (Pa. Super. 2008) (citing

***Fonner***, 731 A.2d at 163).

In response to Daughter's and Father's testimonies about the June 13,

2015 incident, the trial court opined from the bench as follows:

> All right, I am ready to rule.  I don't need to hear from [Father's] girlfriend.

> \* \* \*

> This is empowering [Daughter].  There is no PFA, okay? I'm dismissing the PFA.  She has to be reasonably in fear.  She's afraid her dad is going to kill her?  She's ten years old, okay? Ten years old.  There is no PFA.

> That being said, what I'm going to do is take my hat off on the PFA and I am going to take this as a Petition For Special Relief.  What I am going to do -- why in God's name they're not in counseling together, not some counselor who says when I feel like it.  They're going into counseling with Dr. Bob as soon as possible, reunification counseling so she can say . . . about how she thinks [Father] favor[s] [K.] and these other things.  You need an opportunity to talk to your daughter in a safe situation, okay?  This baloney about some therapist saying we're not ready to get everybody in -- this should have happened a year ago.

> \* \* \*

> Now, that being said, she has been empowered I think. But, on the other hand, I do think she's a little bit afraid of [Father], all right?

> \* \* \*

> What I am going to do is do exactly what I said I was going to do before, is we are going to have a period until I can get in a couple things with Dr. Bob, and we will talk about that in a minute, but custody is going to have to be in a public place, okay?

> \* \* \*

- 7 -

This is to me to try to get some cooperation from [Daughter] so that we can fix whatever is going on between you. I am convinced that she is afraid of [Father] and not reasonably so. She has a whole bunch of things, like I said, that she needs to say to [Father] but she was all over the block. I cannot see my dad for three years, I could see my dad.

What the bottom line it boiled down -- and this is really the telling thing -- if I could wave a magic wand that your dad couldn't do this anymore to you, when would you want to see him? Tomorrow. Tomorrow, okay?

So this has to be fixed.

* * *

This child can't be empowered anymore. If half of what [Father] is saying is true about these fits she's having, he's terrified to discipline her, I don't blame him. So you guys have to get together on how to discipline this child. I don't know if there's something wrong with her or not. Some kids are like that, they're teenagers. Has she [gone] through puberty yet? Well, I guess she's about to. You guys have to be on the same thing, because you will screw her up if [Father] can't discipline and [Daughter] can do whatever she wants in the house and she can come back running to [Mother] all the time.

He's not right for the way he handled this, I'm not saying that at all, but [Daughter] is being empowered to think she can run in here and get a PFA under these circumstances.

So I'm going to give you an opportunity -- I want by tomorrow, you either pick a therapist, reunification therapist for [Father] and [Daughter], period. [Father] and [Daughter]. I don't care if she's going to 45 other people other than, I don't care. This is to reunify, so that [Daughter] can say the things she felt comfortable enough saying to me, that she can say to [Father].

N.T., 7/1/15, at 73–77.

We reiterate that "[c]redibility determinations are crucial components to any trial proceeding." *Ferko–Fox v. Fox*, 68 A.3d 917, 924 (Pa. Super.

2013). "The trial court's ability to view the petitioner's facial expressions and mannerisms during the ... hearing is critical to an ability to render its credibility determinations." *Id.* Here, the trial court opined that Father mishandled Daughter's outburst, but it did not credit "an emotional ten year old who is admittedly jealous of Father's relationship with [K.]." Trial Court Opinion, 9/21/15, at 6. Indeed, the trial court questioned Daughter's testimony that she was "afraid her dad is going to kill her" and concluded that she was not reasonably in fear of Father. N.T., 7/1/15, at 74, 76. The trial court wisely distinguished Daughter's "fits" and her emotional issues toward Father that need to be resolved. *Id.* at 76; Trial Court Opinion, 9/21/15, at 6.

The trial court weighed the evidence that was properly before it, discredited Daughter's testimony, and, based on a preponderance of the evidence, concluded that Father did not abuse Daughter, as defined in section 6102 of the PFA Act. Mother asks this Court to reweigh Daughter's testimony and conclude it was sufficient for "the Trial Court [to] find by a preponderance of the evidence that [Daughter] was in reasonable fear of serious bodily injury." Mother's Brief at 17. Given the record before us and the trial court's determination that Daughter's testimony was not credible, we discern no abuse of its discretion. Accordingly, Mother's first issue does not warrant relief. *See Leonard v. Smith*, 684 A.2d 622, 627 (Pa. Super.

1996) (appellate court will not disturb PFA court's credibility determinations).

Mother's second claim of error is that the trial court applied a heightened standard in concluding that Daughter was not in fear of her life while in Father's custody. Mother's Brief at 21. Father responds that the trial court "cited the correct language of the PFA statute in its opinion in support of the PFA dismissal." Father's Brief at 13. We agree with Father.

The applicable standard for a finding of abuse is that the victim was in "reasonable fear of imminent serious bodily injury." 23 Pa.C.S. § 6102. Here, the trial court found "no evidence to support [Daughter's] espoused fear that Father was going to kill her, or cause her serious bodily injury." Trial Court Opinion, 9/21/15, at 6. Additionally, the trial court found that Daughter was "afraid" of Father but not "reasonably so." N.T., 7/1/15, at 76. Thus, we reject Mother's argument that the trial court "should not have used a ten year old's words as the standard for abuse under the Act." Mother's Brief at 22. Based on our review of the trial court's analysis, we conclude that it used the appropriate standard when it decline to find abuse. Thus, Mother's second claim of error does not warrant relief.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/26/2016</u>