**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Ronald L. D'COLLANFIELD,
Appellant.**

Superior Court of Pennsylvania.

Argued June 26, 2002.
Filed Aug. 15, 2002.

Charles A. Banta, Easton, for appellant.

Gregg Shure, Asst. Dist. Atty., Allentown, for Commonwealth, appellee.

Before: LALLY–GREEN, OLSZEWSKI and POPOVICH, JJ.

POPOVICH, J.

¶ 1 Appellant Ronald L. D'Collanfield appeals his judgment of sentence entered on September 21, 2001, in the Court of Common Pleas of Lehigh County. On that date, Appellant pleaded guilty to one count of stalking by communication or address, in violation of 18 Pa.C.S.A. § 5504(a.1)(2). Pursuant to a negotiated plea agreement, Appellant was sentenced to three years probation. Upon review, we affirm.

¶ 2 The relevant facts and procedural history are as follows: In January, 2001, Appellant received a court-ordered psychological evaluation for a separate criminal incident. Frank Dattilio, Ph.D., performed the evaluation. Following the evaluation, Appellant began to send Dr. Dattilio "bizarre" E-mails. Between January, 2001, and March, 2001, Appellant sent Dr. Dattilio nine such E-mails. On March 14, 2001, Detective Louis Tallarico of the Allentown Police Department arrested Appellant and charged him with one count of stalking by communication, in violation of 18 Pa.C.S.A. § 5504(a.1)(2), and one count of harassment by communication, in violation of 18 Pa.C.S.A. § 5504(a)(4). A preliminary hearing was held on April 10, 2001. At that time, all charges were waived into the Court of Common Pleas of Lehigh County. On September 21, 2001, pursuant to a negotiated plea agreement, Appellant pleaded guilty to one count of stalking in violation of 18 Pa.C.S.A. § 5504(a.1)(2). On October 22, 2001, Appellant filed a timely notice of appeal pro se. Thereafter, on November 2, 2001, Appellant's plea counsel withdrew from his representation. New counsel was retained on December 5, 2001. The sentencing

court ordered a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal. Appellant complied with this order and filed the Pa.R.A.P. 1925(b) statement on December 28, 2001. The sentencing court filed its Pa.R.A.P. 1925(a) opinion on January 18, 2002.

¶ 3 Appellant presents two questions for our review:

> (1) Did the [trial] court err in [accepting] a guilty plea where the evidence presented at the plea was insufficient to establish guilt beyond a reasonable doubt?
>
> (2) Was trial counsel ineffective for advising [Appellant] to plead guilty where there was insufficient evidence presented to establish guilt beyond a reasonable doubt?

Appellant's brief, at vi.

¶ 4 Initially, we note that Appellant has failed to challenge his guilty plea *via* an optional post-sentence motion. The comment to Pa.R.Crim.P. 720 states, in relevant part:

> A post-sentence challenge to a guilty plea under this rule is distinct from a motion to withdraw a guilty plea prior to sentence. *See* Rule 591. Cf. Standards Relating to Pleas of guilty § 2.1(a)(ii), ABA PROJECT ON MINIMUM STANDARDS FOR CRIMINAL JUSTICE (Approved Draft, 1968). Properly preserved issues related to guilty pleas need not be raised again in the post-sentence motion, but the defendant may choose to do so. A key consideration for the defendant is whether the record will be adequate for appellate review. If counsel is uncertain about the record, it is recommended that the guilty plea be challenged in the post-sentence motion.

 ¶ 5 After a review of the record, we conclude that Appellant's first issue was not properly preserved for appeal because trial counsel failed to preserve the issue by objecting at the sentence colloquy or otherwise raising the issue at the sentencing hearing or through a post-sentence motion. *See* Pa.R.Crim.P. 720(B). Accordingly, we find Appellant's first issue waived for purposes of appeal. *See Commonwealth v. Archer*, 722 A.2d 203, 209 (Pa.Super.1998) (issues not preserved on appeal waived). However, in Appellant's second issue, he argues the deficiencies with his guilty plea arose from the ineffective assistance of trial counsel. Therefore, through Appellant's second issue, we will address the issues regarding his guilty plea.

 ¶ 6 Our standard of review in ineffectiveness cases is well-settled. Counsel is presumed effective, and the appellant has the burden of proving otherwise. *Commonwealth v. Carson*, 559 Pa. 460, 479, 741 A.2d 686, 697 (1999). Appellant establishes ineffectiveness of counsel with a demonstration that: (1) the underlying claim is of arguable merit; (2) counsel's action or inaction was not grounded on any reasonable basis designed to effectuate Appellant's interest; and (3) there is a reasonable probability that the act or omission prejudiced Appellant in such a way that the outcome of the proceeding would have been different. *Commonwealth v. Fletcher*, 561 Pa. 266, 289, 750 A.2d 261, 273 (2000). If the issue underlying the charge of ineffectiveness is not of arguable merit, counsel will not be deemed ineffective for failing to pursue a meritless issue. *Commonwealth v. Rollins*, 525 Pa. 335, 344, 580 A.2d 744, 748 (1990). Also, if the prejudice prong of the ineffectiveness standard is not met, "the claim may be dismissed on that basis alone and [there is no] need [to] determine whether the [arguable merit] and [client's interests] prongs have been met." *Fletcher*, 561 Pa. at 290, 750 A.2d at 274. It is also well-established that claims of ineffective assistance of counsel in relation to a plea of guilt will provide a basis for relief only if the appel-

lant can prove that the ineffectiveness caused an involuntary or unknowing plea. *Commonwealth v. Lewis,* 708 A.2d 497 (Pa.Super.1998).

■ ¶ 7 Our first prong of analysis in an ineffective assistance case is to determine whether Appellant's underlying claim is of arguable merit. In determining whether Appellant's claim has arguable merit, we must first look to the standard applied in withdraw of guilty plea cases. When considering a petition to withdraw a plea submitted to a trial court after sentencing, it is well-established that a showing of prejudice on the order of manifest injustice is required before withdrawal is properly justified. *Commonwealth v. Shaffer,* 498 Pa. 342, 446 A.2d 591 (1982). Appellant argues that his plea of guilty was unknowing and involuntary due to trial counsel's failure to advise him that the Commonwealth did not establish sufficient evidence of the requisite intent necessary to be found guilty of stalking by communication. The true nature of Appellant's claim is whether he entered a guilty plea without a factual basis due to counsel's ineffectiveness. Thus, we must determine whether the evidence presented a factual basis for the plea. *See* Pa.R.Crim.P. 590.[1]

¶ 8 In order to make this determination, we first look to the statutory provisions of the crime of stalking by communication, found in 18 Pa.C.S.A. § 5504(a.1). Title 18 Pa.C.S.A. § 5504(a.1) states, in pertinent part:

**(a.1) Stalking by communication or address.**—A person commits the crime of stalking by communication or address when the person engages in a course of conduct or repeatedly communicates either of the following:

 (1) An intent to place such other person in reasonable fear of bodily injury.

 (2) An intent to cause substantial emotional distress to such other person.[2]

¶ 9 At Appellant's plea hearing, the Commonwealth stated that it would have introduced the following facts to prove the charge of stalking by communication had the case gone to trial:

MR. SHORE: Judge, if Detective Tallarico of the Allentown Police were called to testify, he would state that the defendant received a court ordered evaluation by Dr. Frank Dattilio in January 2001.

Since that point, since receiving Dr. Dattilio's diagnosis of him, the defendant had began sending several E-mail communications with Dr. Dattilio, nine in total, beginning in January of 2001 and continuing through March—the middle of March of 2001.

 (6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

*Commonwealth v. Anthony,* 504 Pa. 551, 558–559, 475 A.2d 1303, 1307 (1984) (case interpreted Pa.R.Crim.P. 319, later amended and renumbered as Pa.R.Crim.P. 590, effective April 1, 2001).

Appellant only challenges the factual basis for his plea. Therefore, we will confine our analysis to that issue.

2. Title 18 Pa.C.S.A. § 5504(a.1) defines "emotional distress" as, "[a] temporary or permanent state of mental anguish."

---

1. Our Supreme Court has held that to satisfy the requirements of Pa.R.Crim.P. 590, the trial court must inquire, at a minimum, the following:

 (1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or *nolo contendere?*

 (2) Is there a factual basis for the plea?

 (3) Does the defendant understand that he/she has the right to a trial by jury?

 (4) Does the defendant understand that he/she is presumed innocent until found guilty?

 (5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?

These emails were harassing and frankly a bit bizarre in nature, and they did cause Dr. Dattilio a great amount of concern and alarm.

N.T. Sentencing Hearing, 9/21/2001, at 4–5.

¶ 10 After the Commonwealth presented the above facts, the sentencing court questioned Appellant as follows:

THE COURT: All right. Well, Mr. D'Collanfield, do you have any recollection of sending these things to Dr. Dattilio?

APPELLANT: Yes, I sent—

THE COURT: Something to him?

APPELLANT: I sent the E-mail. Although it should be pointed out that he sent me an E-mail on March the 6th inviting me to come into his office to get a copy of the psychological evaluation so it's rather strange all the way around.

THE COURT: Do you remember the content of the E-mails that you sent to him?

APPELLANT: I admit that what I was sending him didn't make any sense when you look at it from the whole picture. The judge had ordered that I receive intensive treatment. He had called—he had labeled me a paranoid schizophrenic.

I was shocked at that. I was—he didn't take the time to explain why he came to that, why he arrived at that diagnosis. So I was enraged. I admit that I was out of control. I should not have sent this E-mail. Had I known there was a law against it, I certainly would not have sent it. Ironically, he's the only psychologist in the area who has a website, and therefore, an E-mail address.

N.T. Sentencing Hearing, 9/21/2001, at 5–6.

¶ 11 In our determination of whether the facts provided by the Commonwealth were sufficient to form a factual basis for Appellant's guilty plea to stalking by communication, we note that the appellate courts of this Commonwealth have not yet had an opportunity to analyze 18 Pa. C.S.A. § 5504(a.1). Therefore, we feel it necessary to analyze caselaw pertaining to the stalking statute present in 18 Pa. C.S.A. § 2709(b). Title 18 Pa.C.S.A. § 2709(b) states, in pertinent part:

(b) **Stalking.**—A person commits the crime of stalking when he engages in a course of conduct or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either of the following:

(1) An intent to place the person in reasonable fear of bodily injury; or

(2) An intent to cause substantial emotional distress to the person.

¶ 12 It is clear that the two statutes, 18 Pa.C.S.A. § 5504(a.1) and 18 Pa.C.S.A. § 2709(b), are virtually identical. The only difference between the two crimes is that the course of conduct prohibited by 18 Pa.C.S.A. § 5504(a.1) takes place *via* some method of communication, either written or electronic. *See* 18 Pa.C.S.A. § 5504(a.1).

¶ 13 The first element of the crimes of stalking and stalking by communication is engaging in a course of repetitive conduct. A course of conduct is established by proof of two related but separate events. *Commonwealth v. Leach,* 729 A.2d 608, 611 (Pa.Super.1999). Title 18 Pa.C.S.A. § 5504 defines "course of conduct" as, "[a] pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct." Here, there is no doubt that Appellant engaged in a repetitive course of conduct when he sent nine E-mails to Dr. Dattilio from January, 2001, until March, 2001. Our inquiry centers on whether the Com-

monwealth alleged sufficient evidence at the guilty plea colloquy to show that Appellant had the requisite intent to cause Dr. Dattilio to suffer substantial emotional distress.

¶ 14 In *Commonwealth v. Reese*, 725 A.2d 190 (Pa.Super.1999), we compared the crimes of harassment and stalking and found that harassment was a lesser-included offense of stalking. *Reese*, 725 A.2d at 191. We noted that stalking requires a repetitive course of malevolent conduct, the intent of which was to place someone in fear of bodily injury or cause substantial emotional distress. *Id.*, 725 A.2d at 191. Therefore, the same conduct which amounts to harassment, if committed repeatedly under circumstances that demonstrate intent to place a person in fear of bodily injury or cause substantial emotional distress, would rise to the level of stalking. *Leach*, 729 A.2d at 611. Here, the Commonwealth stated at the sentencing hearing that Appellant sent various bizarre E-mails to Dr. Dattilio over the course of a month. The Commonwealth presented evidence at Appellant's hearing that indicated Dr. Dattilio felt "great concern and alarm" due to the harassing e-mails. It is also clear from Appellant's testimony that he was enraged and out of control due to Dr. Dattilio's diagnosis of him as a paranoid schizophrenic.

¶ 15 We are convinced that this evidence was sufficient to indicate to the trial court that Appellant intended to cause substantial emotional distress to the victim. It is clear that simply because Appellant did not state specifically that he wished to cause "great concern and alarm" or "substantial emotional distress" to Dr. Dattilio that he did not intend to do so. We have held consistently that intent may be inferred from the words or actions of the defendant in light of all attendant circumstances. *Commonwealth v. Pasley*, 743 A.2d 521, 524 (Pa.Super.1999) (citing *Commonwealth v. Chance*, 312 Pa.Super. 435, 458 A.2d 1371 (1983)). Here, the trial court was able to infer the malevolent intent required to convict on a charge of stalking by communication because Appellant, incensed by Dr. Dattilio's diagnosis, engaged in a repetitive course of harassment of Dr. Dattilio, the intent of which was to cause great concern and alarm.[3] *See Leach*, 729 A.2d at 611 (the same conduct which amounts to harassment, if committed repeatedly under circumstances that demonstrate intent to place a person in fear of bodily injury or cause substantial emotional distress, would rise to the level of stalking). Moreover, our Supreme Court has held that one who pleads guilty to a crime acknowledges that the facts and the intent occurred. *See Anthony*, at 558, 475 A.2d at 1307. Accordingly, the trial court did not err when it determined that there was a factual basis for Appellant's guilty plea.[4]

3. We are satisfied that "great concern and alarm" is the type of mental anguish contemplated by both stalking statutes. *See Commonwealth v. Roefaro*, 456 Pa.Super. 588, 691 A.2d 472 (1997) (stalking conviction upheld where victim alarmed by defendant's unwanted romantic protestations).

4. We also note that Appellant executed a written plea colloquy in addition to the on-the-record colloquy with the court. The written colloquy questioned him if he knew what crime was charged against him, and whether his attorney explained the elements of the crime to which he was pleading guilty. Written plea colloquy, at 2. Appellant answered "yes" to both questions. *Id.* at 2. We will not allow Appellant to claim that he lied with respect to the answers made at his guilty plea colloquy and in his written colloquy. *See Commonwealth v. Cole*, 387 Pa.Super. 328, 564 A.2d 203, 206 (1989) (holding that a defendant will not be permitted to postpone the final disposition of his case by lying to the court concerning his culpability and thereafter withdraw his plea of guilty by contradict-

¶ 16 Therefore, we find that Appellant's claim of counsel's ineffectiveness is without arguable merit and affirm his judgment of sentence.

¶ 17 Judgment of sentence affirmed.

ing his prior testimony and asserting inno-