J-A07025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JASPER BAXLEY | : | |
| | : | |
| Appellant | : | No. 860 MDA 2024 |

Appeal from the Judgment of Sentence Entered April 29, 2024
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0001183-2023

BEFORE: BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 25, 2025**

Appellant, Jasper Baxley, appeals from the judgment of sentence entered on April 29, 2024, following his bench trial convictions for stalking and harassment.[1] In this direct appeal, Appellant's counsel has filed both a petition for leave to withdraw as counsel and an accompanying brief pursuant to **Anders v. California**, 386 U.S. 738 (1967) and **Commonwealth v. Santiago,** 978 A.2d 349 (Pa. 2009). We conclude that Appellant's counsel has complied with the procedural requirements necessary to withdraw. Moreover, after independent review of the record, we conclude that the instant appeal is wholly frivolous. Therefore, we grant counsel's petition for leave to withdraw and affirm Appellant's judgment of sentence.

---

[1] 18 Pa.C.S.A. §§ 2709.1(a)(1) and 2709(a)(2), respectively.

We briefly summarize the facts and procedural history of this case as follows. Appellant followed a female employed by the Berks County District Attorney's Office as a victim advocate, in and around her place of business, continuously between April 2022 and March 2023. Victim did not know Appellant. Appellant would sit through trials and outside various courtrooms, in parking garages and on street corners around the courthouse, and outside restaurants and other local establishments to see and wave at Victim. The deputy court administrator for Berks County saw Appellant routinely standing outside on the corner near the parking garage where Victim parked. The deputy court administrator also recalled confronting Appellant about his presence outside a courtroom wherein Appellant stated he was waiting for Victim whom he wanted to speak with about their "spiritual connection." In August 2022, as Victim entered a friend's vehicle, Appellant approached on foot and Victim asked her friend to "hurry up and go." Appellant similarly approached Victim the following day when she was leaving work and alone in her car. Victim took photographs of Appellant following her on both occasions. Appellant began to adapt to Victim's work and lunch schedule almost every day. Appellant was waiting for Victim in the parking garage before and after Victim's workday and outside on the street corner at lunchtime. On December 28, 2022, Appellant again approached Victim on foot while she was driving and Victim rolled down her window and asked Appellant to "just stop… please," but he continued to follow her. On January 4, 2023, Appellant followed Victim

on foot while she was driving and Victim believed that Appellant was writing down her license plate number.

On January 5, 2023, believing that things were escalating, Victim filed a police report with the City of Reading Police Department. Victim told the police that Appellant's actions made her uncomfortable, nervous, and anxious and that she suffered panic attacks and feared for her safety as a result. On January 6, 2023, Victim called the police after noticing Appellant waiting for her after work. Thereafter, Detective Gerardo Vega spoke with Appellant and advised him that Victim had made a harassment complaint against Appellant. Detective Vega asked Appellant to leave the area, avoid contact with Victim, and suggested that Appellant could be arrested for stalking if he continued to follow her. In February 2023, Detective Vega again confronted Appellant in Victim's parking garage and escorted Appellant to his office for a videotaped interview. Appellant acknowledged his affection for Victim but promised not to have any additional contact. One week later, Detective Vega saw Appellant on the corner next to the courthouse and told him to leave. Later that day, Victim called the police and reported that Appellant followed her to a restaurant where she had lunch and was waving at her and trying to get her attention from outside. The next day, Appellant was observed outside the courthouse again and Detective Vega went to speak with him. Appellant admitted he was attracted to Victim, followed her at lunch the day before, and told Detective Vega to stop "getting between him and God's work." Appellant was then arrested and charged with the aforementioned crimes.

On February 29, 2024, the trial court found Appellant guilty of stalking and harassment. The trial court deferred sentencing until April 29, 2024, when it imposed a sentence of 28 months to five years of incarceration for stalking, with 421 days of credit for time served.[2] Appellant filed a timely post-sentence motion which was denied on May 14, 2024. This timely appeal resulted.[3]

On appeal, Appellant's counsel filed a petition for leave to withdraw and counsel accompanied this petition with an *Anders* brief. Before reviewing the merits of this appeal, we first determine whether counsel has fulfilled the necessary procedural requirements to withdraw as counsel. *Commonwealth v. Miller*, 715 A.2d 1203, 1207 (Pa. Super. 1998).

To withdraw under *Anders*, counsel must satisfy certain technical requirements. First, counsel must "petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous." *Miller*, 715 A.2d at 1207. Second, counsel must file an *Anders* brief, in which counsel:

> (1) provide[s] a summary of the procedural history and facts, with citations to the record; (2) refer[s] to anything in the record that counsel believes arguably supports the appeal; (3) set[s] forth counsel's conclusion that the appeal is frivolous; and (4) state[s]

---

[2] The harassment conviction merged with stalking for sentencing purposes.

[3] Appellant filed a timely notice of appeal on June 13, 2024. On June 18, 2024, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely. On July 15, 2024, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

- 4 -

counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. Finally, counsel must furnish a copy of the *Anders* brief to his or her client and advise the client "of [the client's] right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention." *Commonwealth v. Woods*, 939 A.2d 896, 898 (Pa. Super. 2007) (citation omitted).

If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." *Santiago*, 978 A.2d at 355 n.5; *see also Commonwealth v. Yorgey*, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*) (holding that the *Anders* procedure requires this Court to review "the entire record with consideration first of the issues raised by counsel .... [T]his review does not require this Court to act as counsel or otherwise advocate on behalf of a party. Rather, it requires us only to conduct a review of the record to ascertain if[,] on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated. We need not analyze those issues of arguable merit; just identify them, deny the motion to withdraw, and order counsel to analyze them[.]"). It is only when all of the procedural and substantive requirements are satisfied that counsel will be permitted to withdraw.

- 5 -

Here, counsel complied with all of the above procedural obligations.[4] We must, therefore, review the entire record and analyze whether this appeal is, in fact, wholly frivolous. Our analysis begins with the claim raised in the *Anders* brief, which is as follows:

1. Whether the evidence at [t]rial was sufficient to support a [conviction for] stalking[?[5]]

*Anders* Brief at 6.

Appellant contends that he "spoke with the victim just one time" and "[t]here was no other conversation between Appellant and [V]ictim." *Id.* at 15. Appellant posits that there "was never a threat or verbal harassment of any kind" and that "[h]e never expressed a desire to harm [Victim] nor put her in fear of harm" despite feeling "a spiritual connection with [V]ictim." *Id.*

---

[4] Furthermore, Appellant has not responded to counsel's petition to withdraw.

[5] Appellant does not challenge his conviction for harassment. However, this Court has previously stated:

[W]e compared the crimes of harassment and stalking and found that harassment was a lesser-included offense of stalking. We noted that stalking requires a repetitive course of malevolent conduct, the intent of which was to place someone in fear of bodily injury or cause substantial emotional distress. Therefore, the same conduct which amounts to harassment, if committed repeatedly under circumstances that demonstrate intent to place a person in fear of bodily injury or cause substantial emotional distress, would rise to the level of stalking.

*Commonwealth v. D'Collanfield*, 805 A.2d 1244, 1249 (Pa. Super. 2002) (internal citations omitted). As discussed below, having determined that there was sufficient evidence to support a conviction for stalking, we likewise find sufficient evidence to support Appellant's harassment conviction.

Appellant maintains that "all of the encounters" between them "were on a public street, where Appellant has every right to be." *Id.* He concludes that because "[i]t was not Appellant's intention to cause emotional distress … [t]he evidence introduced at [t]rial did not demonstrate the requisite *mens rea* required for a conviction" for stalking. *Id.*

Our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[-]finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth [need] not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Anderson*, 299 A.3d 894 (Pa. Super. 2023) (citation omitted). Alleged variances in testimony go to the credibility of the witnesses and not the sufficiency of the evidence. *See Commonwealth v. Johnson,* 180 A.3d 474, 478 (Pa. Super. 2018). "It is well-settled that even the uncorroborated testimony of a single witness may alone be sufficient to

convict a defendant." ***Commonwealth v. Gilliam***, 249 A.3d 257, 268 (Pa. Super. 2021) (internal quotation and citation omitted).

A person commits the crime of stalking when he:

(1) engages in a course of conduct or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person[.]

18 Pa.C.S.A. § 2709.1(a)(1). "Emotional distress" is defined as "[a] temporary or permanent state of mental anguish." 18 Pa.C.S.A. § 2709.1(f).

This Court has consistently held that "simply because [a defendant] did not state specifically that he wished to cause 'great concern and alarm' or 'substantial emotional distress' to [a victim] that [the defendant] did not intend to do so [because] intent may be inferred from the words or actions of the defendant in light of all attendant circumstances." ***Commonwealth v. D'Collanfield***, 805 A.2d 1244, 1249 (Pa. Super. 2002). Recently, we have determined that "knowledge that the police knew [a defendant] was stalking the victim and had warned him to stop doing so" may "permit[] an inference of his intent to cause the victim emotional distress." ***Commonwealth v. Gold***, 328 A.3d 505 (Pa. Super. 2024) (non-precedential decision).[6] However, "[t]here are no 'magic words' a stalking victim must speak to establish that he or she suffered substantial emotional distress[.]"

---

[6] ***See*** Pa.R.A.P. 126(b) (non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value).

- 8 -

***Commonwealth v. Hardy***, 270 A.3d 1133 (Pa. Super. 2021) (non-precedential decision). Finally, "[t]he Commonwealth is not required to prove *mens rea* by direct evidence [because, [f]requently such evidence is not available" and, therefore, "the Commonwealth may rely on circumstantial evidence." ***Commonwealth v. Sexton***, 222 A.3d 405, 417 (Pa. Super. 2019) (citation omitted).

In this case, the trial court determined:

The facts clearly establish that [Appellant] was made fully aware that his actions were causing fear and significant emotional distress. […V]ictim in this case begged [Appellant] to 'please stop' what he was doing. That plea went completely ignored by [Appellant]. Moreover, [Appellant] was given several opportunities by law enforcement to stop what he was doing and was directly told that [Victim] was in fear of him and highly upset.

In the video[-taped police interview] that was played for the court, [Appellant] appeared genuinely sympathetic and told Detective Vega that he did not want her to feel upset. Detective Vega told [Appellant] that he could stop that by leaving [Victim] alone and by not attempting to make contact with her. Again, these warnings were seemingly snubbed by [Appellant] who later told Detective Vega that he was attracted to [Victim], that he ignored the [d]etective's warnings to stay away from her, that he followed her despite the warnings, and – perhaps most disturbingly – that the [d]etective was getting in between [Appellant] and God's work. ***See*** N.T., 2/29/2024, at 62-63.

While [the trial] court recognize[d] the fact that [Appellant] did not speak to [V]ictim or cause her any bodily harm, […] such facts are of no legal consequence in determining whether [Appellant] possessed the requisite *mens rea* to be convicted of stalking.

\*          \*          \*

For almost a year, between April of 2022 and March 1, 2023, on a virtual everyday basis, [Appellant] engaged in course of conduct by waiting, watching, and following [V]ictim. He would be present

at her arrival and departure from work, and would wait for her outside during her lunch hour.

His purported infatuation with [Victim] caused extensive nervousness and uncomfort[ableness] initially. As his behavior became more bizarre – from standing at the employee entrance/exit[,] to being at the street corner when she came and left work, to running up to [her while she was in her vehicle] when she appropriately came to a stop – she became more anxious, fearful, and afraid. His repeated actions of making eye contact and hand gestures ultimately led [V]ictim to suffer panic attacks and to be left in fear of physical assault. Efforts by law enforcement proved to be an exercise in [f]utility. [Appellant] acknowledged that he was inflicting intense emotional distress and that he was attracted to [V]ictim. These endless incursions into [V]ictim's life, after many warnings of what he was doing to [V]ictim, shows continued circumstances which demonstrate an absolute intent to cause emotional distress to [V]ictim.

Trial Court Opinion, 7/15/2024, at 11-12.

Based upon our standard of review, applicable law, and examination of the certified record in this case, we are strongly persuaded that the Commonwealth introduced sufficient evidence to support Appellant's stalking conviction. The trial court, as fact finder, examined all of the attendant circumstances and inferred Appellant's intent to cause Victim substantial emotional distress. Despite Appellant's statements to police that he did not wish to cause Victim harm, Appellant's continued actions of following Victim, after the police had warned him to stop doing so, permitted the court to infer his intent to cause emotional distress. Moreover, Victim was not required to speak "magic words" to Appellant to show she suffered emotional distress, but she did specifically ask Appellant to stop his behavior. As such, we reject Appellant's suggestion that he was not aware, or that he did not intend, to

cause Victim emotional distress. For all of the foregoing reasons, we find that there was sufficient evidence to support Appellant's conviction for stalking.

Accordingly, we have independently considered the issue raised within counsel's **Anders** brief and we have determined that the claim is frivolous. In addition, after independent review of the entire record, we see nothing that might arguably support this appeal. The appeal is, therefore, wholly frivolous. Hence, we affirm Appellant's judgment of sentence and grant counsel's petition for leave to withdraw.

Petition for leave to withdraw granted. Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/25/2025