J-S03011-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                : PENNSYLVANIA
                                :
            v.                  :
                                :
                                :
                                :
ELAINE ETTORRE                  :
                                :
            Appellant           :   No. 205 MDA 2025

Appeal from the Judgment of Sentence Entered September 19, 2024
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0003303-2022

BEFORE:  DUBOW, J., BECK, J., and LANE, J.

MEMORANDUM BY DUBOW, J.:          **FILED: MARCH 2, 2026**

Appellant, Elaine Ettorre, appeals from the September 19, 2024 judgment of sentence of a period of one day to two years less one day in county jail entered in the Lancaster County Court of Common Pleas following her conviction of Stalking.[1]  Appellant challenges the sufficiency and weight of the evidence, the court's refusal to conduct a **Grazier**[2] hearing and to appoint standby counsel, an evidentiary ruling, and the denial of her motion to dismiss on double jeopardy grounds.  After careful review, we affirm.

The relevant facts and procedural history are as follows.  On May 16, 2022, the Commonwealth filed a criminal information alleging that from December 2018 to April 2022, Appellant engaged in a course of harassing

_____

[1] 18 Pa.C.S. § 2709.1(a)(1).

[2] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

conduct that constituted stalking the victim. This conduct included: (1) screaming profanities at the victim; (2) allowing her dog to defecate on the victim's property; (3) parking in front of the victim's house and blasting loud music from her vehicle; (4) calling the victim "fat"; and (5) sending numerous e-mails to the victim's employers and high-ranking Lancaster County officials accusing the victim of unethical conduct.

Appellant initially retained private counsel, Attorney Katherine McShane, to represent her; however, on November 27, 2023, Attorney McShane filed a petition to withdraw indicating that Appellant had requested her withdrawal. Later that day, Appellant filed a response to the petition objecting to counsel's request to withdraw, alleging that the "bad faith actions of the District Attorney's Office have created conflicts which have resulted in a Petition to Withdraw as Defense Counsel[.]" Answer, 11/27/23, at ¶ 17. She urged the court to deny the motion because "she cannot afford another lawyer, still owes money to the lender for her current lawyer, and does not waive her Sixth Amendment right to legal counsel." *Id.* at ¶ 18.

On December 1, 2023, Attorney McShane filed an amended petition to withdraw explaining that she had believed Appellant concurred with her request to withdraw because Appellant had repeatedly expressed a lack of trust in Attorney McShane, that every discussion with Appellant "devolve[d] into conspiracy theories," and that Appellant was unable to communicate appropriately with her. Amended Mot., 12/1/23 at ¶¶ 5-6. Attorney McShane attached correspondence from Appellant in which Appellant stated that

Attorney McShane was "disqualified" from representing her and accused Attorney McShane of lying to and vilifying her. *Id.* at ¶¶ 9-10. On December 28, 2023, the trial court granted Attorney McShane's petition to withdraw.

On January 10, 2024, Appellant *pro se* filed a "Motion for Appointment of Counsel, Recusal of Lancaster County Bench, Recusal of Lancaster County District Attorney's Office, and Dismissal of All Charges pursuant to Pa.R.Crim.P. Rule 600." On January 26, 2024, Appellant appeared at the call of the list and expressed confusion regarding whether she was represented by counsel. The court informed Appellant that it had permitted her prior counsel to withdraw and that she would be proceeding *pro se* unless she obtained new private counsel or sought court-appointed counsel. On February 7, 2024, the trial court denied Appellant's motion and explained by order that Appellant could obtain private counsel or apply for a public defender.

On February 26, 2024, Appellant filed a second "Request for Appointment of Counsel/Recusal of Trial Judge." The next day, the court held a hearing at which it reviewed the background of the case and explained that "[a]s a matter of courtesy to Appellant, [it] granted [the] hearing so that any misunderstanding would be straightened out and the case [could] be prepared for call of the list." N.T. Hr'g, 2/27/24, at 4. During the hearing, Appellant repeatedly represented that she did not want to proceed *pro se*, wanted new counsel appointed, and had applied, but did not qualify, for a public defender. When pressed by the court, Appellant admitted that she had not submitted all the required paperwork and, therefore, her application had not been

- 3 -

processed. The court notified Appellant that if she failed to secure an attorney by the beginning of April, she would need to be prepared to represent herself at trial.

On March 27, 2024, Appellant filed a "Motion to Dismiss Criminal Information due to Double Jeopardy" in which she contended that the conduct alleged in the criminal information was not criminal and did not show a pattern of conduct intent as envisioned by the Stalking statute. She further contended that, "regardless, [Appellant] has already gone to trial for the exact same acts alleged in the criminal information" because the victim filed a private criminal complaint on March 15, 2022, alleging a series of acts perpetrated by Appellant between January 2019 and February 15, 2022. Mot., 3/27/24, at ¶¶ 4-5. Appellant alleged, in particular, that after the victim filed a private criminal complaint, Appellant was charged and convicted of three counts of summary Harassment for separate incidents that occurred prior to the filing of the criminal information in the instant case. Following her conviction by the magistrate judge, Appellant filed appeals from her convictions to the Court of Common Pleas, which were pending at the time she filed her motion. On April 1, 2024, the trial court denied Appellant's motion to dismiss, finding that, because Stalking is a "course of conduct" offense, the Commonwealth was not barred from prosecuting Appellant for Stalking simply because Appellant's prior summary Harassment convictions arose from incidents that later formed the basis of the Commonwealth's "course of conduct" allegations in support of the Stalking prosecution.

- 4 -

Meanwhile, on March 28, 2024, Appellant again appeared for call of the list, still unrepresented by counsel. She informed the court that she had tried to hire an attorney but could not afford one. She further represented that she "believed" she had applied for a public defender. N.T. Hr'g, 3/28/24, at 2-3. A representative from the office of Bail Administration who was present at the hearing explained that the office had informed Appellant of the documentation required to complete her application for appointment of counsel, but that Appellant had failed to submit the requisite documentation. The Bail Administration representative also reported that Appellant's boyfriend, Steve Kirchner, had been communicating with the office on Appellant's behalf. The court then notified Appellant that she needed to be prepared to go to trial at the next term with or without counsel.

On April 1, 2024, the court issued an order stating that it would only grant Appellant a continuance of trial upon an attorney's entry of appearance or receipt of a notice from Bail Administration that Appellant had submitted all the documents necessary to obtain a public defender. On April 5, 2024, the court issued an order stating that Appellant would proceed to trial *pro se* unless an attorney entered an appearance on her behalf. In that order, the court also appointed attorney Daniel Bardo as stand-by trial counsel, noting that his services were for trial only, unless or until Appellant formally retained him.

The next day, Appellant *pro se* filed an "Objection to Being Forced to Proceed *Pro Se*," in which she argued, *inter alia*, that Attorney Bardo's

appointment as stand-by counsel "falsely implies that [Appellant] has waived her Sixth Amendment right to competent legal representation." Objection, 4/6/24.

That same day, the trial court received in chambers an email from an address known to be Appellant's, but signed by Mr. Kirchner stating, "we've cancelled Bardo," and "[n]ice try sleezbags." N.T. Hr'g, 4/11/24, at 9-10.

On April 11, 2024, the trial court held a hearing at which Attorney Bardo, Appellant, Mr. Kirchner, and Assistant District Attorneys Christopher Miller and Jessica Collo were present. Appellant and Mr. Kirchner denied any knowledge of the email sent from Appellant's email address to chambers the prior week and an additional April 4, 2024 email sent to Bail Administration stating "I got Judge Wrong's order today.[3] I'm not sending you another fucking thing because, one, you already testified under oath and I don't qualify and, two, you have a big fucking mouth." *Id.* at 11-12. That same day, the court dismissed Appellant's "Objection to Being Forced to Proceed *Pro Se*" as meritless.

On April 12, 2024, the Commonwealth filed a notice of intent to introduce evidence of Appellant's prior bad acts, namely her prior summary Harassment convictions. The Commonwealth asserted that this evidence was relevant to Appellant's prosecution to demonstrate the history of the case and because these crimes are interwoven with the pending Stalking charge. The

---

[3] The Honorable Jeffrey D. Wright presided over these proceedings.

Commonwealth also argued that the evidence was admissible to establish Appellant's intent to stalk and course of conduct, both of which are elements of the offense of Stalking. On May 7, 2024, the trial court granted the Commonwealth's request to introduce this evidence for purposes of establishing a "course of conduct" and pursuant to the "complete story doctrine." Order, 5/7/24, at 1.

Meanwhile, Appellant and Mr. Kirchner continued to send inappropriate emails including an April 13, 2023 email to ADA Miller that included a photograph of dog feces. At an April 25, 2024 hearing at which Appellant denied sending that email, she also stated "I have filed my entry of appearance. . . . I have chosen to proceed *pro se*. . . . I have waived my right to counsel unless I hire private counsel . . . I am prepared to proceed *pro se*." N.T. Hr'g, 4/25/24, at 20.

On July 12, 2024, and August 26, 2024, the court held miscellaneous hearings to address a request by Attorney Bardo to withdraw as stand-by counsel, in which he indicated his belief that he could not fulfil the duties of stand-by counsel because Appellant had, *inter alia*, sent inappropriate emails to him[4] and believed Attorney Bardo had been "appointed for the sole purpose of gaslighting [her] to the [c]ourt." N.T. Hr'g, 8/26/24, at 10. Immediately

_____

[4] This includes a July 11, 2024 email in which Appellant stated she "hopes that [Attorney Bardo's] wife and daughter get cancer and die" and a later email in which Appellant stated that she should have said Attorney Bardo's wife and daughter "probably have AIDS." N.T. Hr'g, 7/12/24, at 24; N.T. Hr'g, 8/26/24, at 7-8.

following the August 26, 2024 hearing, the court entered an order vacating Attorney Bardo's appointment as stand-by counsel and prohibiting Appellant from having any further contact with him, his family, and his law firm.

On September 16, 2024, Appellant's jury trial on the Stalking charge commenced, at which Appellant appeared *pro se*. The Honorable Jeffrey D. Wright has authored a comprehensive opinion supported by the record which thoroughly set forth in detail the testimony and other evidence presented by both the Commonwealth and Appellant at trial and we adopt its recitation for purposes of our review. **See** Trial Ct. Op., 5/1/25, at 8-14.

At the close of Appellant's four-day trial, the jury convicted Appellant of Stalking. Immediately following the conviction, the trial court sentenced Appellant to a period of incarceration of one day to two years less one day in county jail, plus a three-year probationary tail. In addition to also ordering that Appellant undergo a psychological evaluation and comply with treatment recommendations, the court also prohibited Appellant from being within 100 yards of the victim, her home, or her place of business, and ordered Appellant to have no contact with the victim, all witnesses, and court personnel involved in the case.

Appellant *pro se* filed a timely post-sentence motion challenging, *inter alia*, the weight of the evidence. On November 14, 2024, Attorney J.B. Fitzgerald entered his appearance on Appellant's behalf. On December 6, 2024, the trial court denied Appellant's motion.

Appellant did not file a timely notice of appeal. However, on January 8, 2025, Attorney Lonny Fish entered his appearance and filed a petition for collateral relief asserting that Attorney Fitzgerald had been *per se* ineffective by failing to file a notice of appeal. The trial court granted relief and reinstated Appellant's direct appeal rights *nunc pro tunc*.

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following six issues on appeal:

1. Was the evidence sufficient to support finding [] Appellant guilty beyond a reasonable doubt on the charge of Stalking[]?

2. Did the trial court err and abuse its discretion by affirming the jury verdict of guilty against the weight of the evidence?

3. Did the trial court err by failing to conduct a **Grazier** hearing, after Appellant entered her appearance *pro se*?

4. Did the trial court err in failing to appoint standby counsel, following Attorney Bardo's withdrawal from Appellant's case?

5. Did the trial court err and abuse its discretion by permitting testimony regarding Appellant's prior bad acts, over Appellant's objection?

6. Did the trial court err by failing to grant Appellant's motion to dismiss due to violations of double jeopardy?

Appellant's Br. at 9-10.

In her first issue, Appellant challenges the sufficiency of the evidence in support of her Stalking conviction. *Id.* at 19-21. In particular, she claims that the Commonwealth failed to prove that she acted with the intention to cause the victim substantial emotional distress. *Id.* at 19. In support of this claim, she highlights her own testimony that she did not intend to provoke a

fear response in the victim or cause her any substantial emotional distress, characterizes her "alleged" actions as "innocuous," and contends that given the length of time over which the incidents occurred, "no reasonable person would believe that these actions rise to the level of intentionally causing substantial emotional distress." *Id.* at 20-21.

Preliminarily, we observe that appellate briefs must conform in all material respects to the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. 2101; *see also id.* at 2114–2119 (addressing specific requirements of each subsection of brief on appeal). "[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities." *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (internal citation omitted). "This Court will not act as counsel and will not develop arguments on behalf of an appellant." *Commonwealth v. Kane*, 10 A.3d 327, 331 (Pa. Super. 2010) (citation omitted). If a deficient brief hinders this Court's ability to address an issue on review, we shall consider the issue waived. *Commonwealth v. Gould*, 912 A.2d 869, 873 (Pa. Super. 2006); *see also* Pa.R.A.P. 2101 (explaining that substantial briefing defects may result in dismissal of appeal).

Instantly, Appellant has failed to develop her argument regarding the sufficiency of the evidence with specific citations to the record and with citation to and discussion of any legal authority supporting her claim that the

Commonwealth's evidence was insufficient to prove the intent element of the Stalking statute. These defects preclude our review of this claim. Accordingly, Appellant has waived this issue.

Appellant next claims that the jury's verdict was against the weight of the evidence because of the "'he said, she said' nature of this case" and because the cell phone videos recording Appellant's conduct "did not show any events proceeding [*sic*] to this alleged inappropriate behavior of Appellant." Appellant's Br. at 21. Appellant also contends that the jury gave the victim's testimony undue weight and she "challenges the appearance of [the victim's] improper ties to the Lancaster County court system[.]" *Id.* at 21-22.

Appellant has again failed to develop her argument in support of this claim with citation to or discussion of any authority analyzed under the facts of this case. We, therefore, find this claim waived.[5]

In her third issue, Appellant claims the trial court erred in failing to: (1) conduct a ***Grazier*** hearing after she entered her appearance *pro se* to ensure that she understood the potential consequences of proceeding to trial without an attorney; and (2) hold a hearing on Attorney McShane's motion to withdraw as counsel. *Id.* at 23-27. She also claims the court erred in finding that

---

[5] Even if Appellant had not waived this issue, we agree with the trial court that the "jury's verdict [is not] shocking to one's sense of justice." Trial Ct. Op. at 20. Moreover, as the trial court noted, "the jury's credibility assessment of the witnesses involved—particularly [the victim] and Appellant—must be afforded complete discretion," especially because the jury heard them testify extensively and "spent four days observing Appellant's behavior as she represented herself during trial." *Id.* at 20-21. We would, thus, find Appellant's challenge to the weight the jury gave to the evidence meritless.

Appellant forfeited her right to counsel. *Id.* Appellant concedes that the court did advise her of her right to be represented by counsel and that, if she waived the right to counsel, she would be bound by the rules of procedure. *Id.* at 25. However, she contends that the court failed to confirm that she understood the nature and elements of the charge against her and was aware of the permissible range of sentences for the offense charged, possible defenses to the charge, and that any defenses or objections, if not asserted, could be waived. *Id.* at 25-26. She also contends that the court's forfeiture finding was erroneous because she repeatedly informed the court that she did not wish to proceed *pro se* and had been actively trying to obtain counsel but was unsuccessful because of financial concerns and conflicts with the Lancaster County bar. *Id.* at 26-27.

"Both the right to counsel and the right to self-representation are guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section Nine of the Pennsylvania Constitution." *Commonwealth v. Houtz*, 856 A.2d 119, 122 (Pa. Super. 2004) (citation omitted). A criminal defendant can waive or forfeit her right to counsel. *Commonwealth v. Thomas*, 879 A.2d 246, 257 (Pa. Super. 2005). "Waiver is an intentional and voluntary relinquishment of a known right" that is only valid if the defendant makes it knowingly, intentionally, and voluntarily." *Id.* (internal quotation marks omitted) (citing *U.S. v. Goldberg*, 67 F.3d 1092, 1099 (3d Cir. 1995). To ensure that the defendant's waiver of counsel in knowing, intentional, and

voluntary, the court must conduct a colloquy at each critical stage of the proceedings. *Grazier*, 713 A.2d at 82; Pa.R.Crim.P. 121(c).

Forfeiture, on the other hand, "does not require that the defendant intend to relinquish a right, but rather may be the result of the defendant's extremely serious misconduct or extremely dilatory conduct." *Thomas*, 879 A.2d at 257 (internal quotation marks omitted) (citing *U.S. v. Thomas*, 357 F.3d 357, 362 (3d Cir. 2004). Notably, where a defendant forfeits her right to counsel, the court need not conduct a Pa.R.Crim.P. 121 colloquy. *Commonwealth v. Coleman*, 905 A.2d 1003, 1008 (Pa. Super. 2006).

A defendant may forfeit her right to counsel "through [a] pattern of serious misconduct, abuse, threats, and utter failure to collaborate in [her] own defense[,]" or where her conduct results in a delay to the proceedings. *Thomas*, 879 A.2d at 258; *see also Commonwealth v. Cook*, 325 A.3d 1275, 1279 (Pa. Super 2024).

Here, the trial court found that Appellant forfeited her right to counsel. This presents a pure question of law to which we apply a *de novo* standard of review. *Commonwealth v. Lucarelli*, 971 A.2d 1173, 1178 (Pa. 2009).

Following our review of the record, we conclude that, through her conduct, Appellant forfeited her right to counsel. As noted above, Appellant's first counsel, Attorney McShane withdrew because Appellant expressed a lack of trust in her and accused Attorney McShane of lying to and vilifying her. After the court permitted Attorney McShane to withdraw, Appellant expressed clearly that she did not wish to proceed *pro se* but could not afford an attorney.

- 13 -

As a result, the trial court gave Appellant numerous opportunities to apply for a public defender. At a later miscellaneous hearing, Appellant informed the court that she had submitted the requisite documentation for appointment of a public defender, but a representative from Bail Administration was present and confirmed that Appellant had not, in fact, done so. Following the hearing, Appellant sent an email to Bail Administration stating that she would not be "sending you another fucking thing because, one, you already testified under oath and I don't qualify, and two, you have a big fucking mouth." N.T. Hr'g, 4/11/24, at 11-12. The record reflects that the court held five miscellaneous hearings to address Appellant's counsel-related issues and filed numerous orders clarifying that Appellant needed to apply for a public defender, hire private counsel, or proceed to trial *pro se*, yet Appellant took no action.

When it became clear to the court that Appellant was not going to apply for a public defender or retain private counsel, the court appointed Attorney Bardo as standby counsel. Rather than use Attorney Bardo's assistance, however, Appellant claimed that Attorney Bardo had been "appointed for the sole purpose of gaslighting [her] to the [c]ourt"[6] and sent him emails telling him that she hoped his wife and daughter died of cancer and AIDS.

Following our *de novo* review, we agree with the trial court that "Appellant's behavior toward her hired and appointed attorneys, and toward the [c]ourt and [c]ourt staff, cannot be described as anything other than

_____

[6] N.T. Hr'g, 8/26/24, at 10.

'serious and extremely dilatory misconduct.'" Trial Ct. Op. at 23. Simply, "[h]er disrespect, vulgarity, lewdness, and utterly profane rejection of legal assistance throughout the pretrial process forfeited any right she had to counsel[.]" *Id.* We also reiterate that Appellant's dilatory conduct and misrepresentations to the court regarding the status of her application for appointment of a public defender resulted in the court allocating time and resources to hold five miscellaneous hearings to address her counsel-related issues. While it is not clear that these hearings resulted in delays to the proceedings, we cannot overlook the burden placed on the court by this dilatory conduct. We, thus, conclude that Appellant forfeited her right to counsel and was not entitled to a *Grazier* hearing or a Pa.R.Crim.P. 121 colloquy. Accordingly, this claim fails.

In her related fourth issue, Appellant alleges that the court erred in failing to appoint her standby counsel after Attorney Bardo withdrew from representing her. Appellant's Br. at 26-27. Having found that Appellant forfeited her right to counsel, however, we need not address this claim.

In her fifth issue, Appellant claims that the trial court abused its discretion in permitting the Commonwealth's witness, Jonathan Rodriguez, to testify regarding an incident he had with Appellant that Appellant claims was unrelated to any incidents she had with the victim. *Id.* at 29-30. She contends there was "no logical [connection] between the incident involving Jonathan Rodriguez and the alleged crime involving [the victim]." *Id.* at 30.

- 15 -

It is axiomatic that the Rule 1925(b) statement "shall set forth only those errors that the appellant intends to assert" and "concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(i), (ii). "Issues not included in the [s]tatement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." *Id.* at 1925(b)(4)(vii). Our review confirms that Appellant did not raise a claim that the trial court had erred in admitting Mr. Rodriguez's testimony in her Rule 1925(b) statement.[7] Accordingly, she has waived this claim.[8]

In her final issue, Appellant contends that the trial court erred when it denied her motion to dismiss on double jeopardy grounds. Appellant's Br. at 30-32. She claims she has already been tried and convicted for the "string of events, spanning a period of two [] years" that form the basis of the instant prosecution. *Id.* at 30. In particular, she notes that the Commonwealth charged her with, and the magistrate court convicted her of, Harassment for

---

[7]Nor did the trial court address it in its Rule 1925(a) opinion.

[8] Even if Appellant had preserved this issue by raising it in her Rule 1925(b) statement, we would find it waived because she did not set forth in her brief any details regarding the nature of the incident with Mr. Rodriguez, the content of his testimony, or explained how the admission of Mr. Rodriguez's testimony prejudiced her. In addition, although Appellant cited to boilerplate authority explaining our standard of review and general principles concerning the admission of evidence, she has not applied the facts of this case to any relevant authority in support of her claim its admission was in error. Appellant's failure to develop her argument with pertinent details and legal analysis would have fatally hampered our ability to conduct meaningful appellate review.

discrete events that occurred on February 2, 2022, April 17, 2022, and July 26, 2022. *Id.* at 31. She also contends that because both the Harassment and Stalking statutes have "course of conduct" as an overlapping element, her prior prosecutions for Harassment bars the instant Stalking prosecution.[9] *Id.* at 31. The gist of Appellant's argument is simply that because she had already been convicted of harassing conduct, the Commonwealth cannot hold her accountable for additional, unrelated criminal conduct. This argument is illogical and lacks merit.

"The question of whether a defendant's constitutional right against double jeopardy would be infringed by a successive prosecution is a question of law." *Commonwealth v. Gross*, 232 A.3d 819, 384-35 (Pa. Super. 2020) (*en banc*) (citation omitted). We review such questions *de novo*. *Id.* at 835.

"Double jeopardy protections prohibit a person from being twice tried for actions arising from the same factual predicate. It does not bar successive prosecutions based upon temporally distinct actions that happen to impinge the same section of the Crimes Code." *Commonwealth v. Roefaro*, 691 A.2d 472, 474 (Pa. Super. 1997).

Instantly, to establish that Appellant had engaged in a course of criminal conduct, the criminal complaint filed in this matter included some of the incidents that resulted in Appellant's summary Harassment convictions. It did not, however, rely solely on those instances of conduct; it also included new

---

[9] Appellant has included in her brief the text of the Harassment statute but not the Stalking statute.

"temporally distinct" allegations of harassing behavior for which Appellant had not yet been prosecuted.[10]  Moreover, contrary to Appellant's claim, she had not "already been tried and convicted for the 'string of events, spanning a period of two [] years'" that underly this Stalking prosecution;[11] rather her previous summary convictions were based on three discrete events that subsequently formed the basis for the criminal "course of conduct" underlying the Stalking charge.  Therefore, Appellant was not "being twice tried for actions arising from the same factual predicate" and double jeopardy protections do not apply to bar the instant prosecution.  ***Id.***

In sum, having found each of Appellant's issues either meritless or waived, we affirm her judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary


Date: 03/02/2026

_____

[10] For example, the instant criminal complaint included emails sent by Appellant to the victim's employer on April 6, 2022, and April 20, 2022, and an April 21, 2022, incident where Appellant screamed at the victim on a public street.

[11] Appellant's Br. at 30.

- 18 -